might be light to the evidence tending to establish some facts in the case, it was for the jury to determine whether they believed it, and, if so, whether it did establish it. We may safely assume, we think, that at the time this distinction was clearly understood.

Instructions given by the court as due to the defendant in regard to the posting and accessibility of the registry list and copies seemed to be favorable to the inspectors in the extreme limit of permissible liberality. The criticism of other portions of the charge does not seem to us to require special mention. Finally, the defendant contends that the verdict is against the evidence.

The foregoing opinion is mainly confined to such exceptions, taken upon the trial, which the defendant impresses upon our attention, as seemed to us worthy of written mention. The examination served to develop, to some extent, the nature of the case. We do not think it necessary to undertake the additional labor to quote and arrange in order the testimony given, to a clear presentation of the whole case. It will suffice to say that we have examined, and the examination satisfies us that the verdict, as offered, is justified by, the evidence.

Justice of the conviction confirmed.

All concur.

---

# Court of Appeals.

November 27, 1894.

## PEOPLE v. JOHN McKANE.

(62 St. Rep. 829; 143 N. Y. 455, affirming 9 N. Y. Cr.)

1. ELECTION LAW—VIOLATIONS—PRINCIPAL.
     Section 29 of the Penal Code applies to the provisions of section 41c of said Code.
2. SAME.
     A person, who induces or procures the members of a board of registry willfully to violate section 33 of Election Law, in relation

to the registration of voters, may be indicted as a principal jointly with the members of the board.

3. SAME—INDICTMENT.

The indictment, in such case, need not charge a conspiracy, as the conspiracy, if shown, is evidence in support of the charge made.

4. SAME—EVIDENCE.

When evidence given on the subject of a conspiracy is sufficient for the jury, the acts and declarations of the conspirators, in furtherance of its purpose and object, are competent.

5. SAME.

The circumstances of the arrest of the persons at the town hall, who were in search of the lists or watching the election, were admissible.

6. SAME.

The power that the defendant wielded through public offices or through the receipt and disbursement of large sums of money, was, under the circumstances a proper inquiry.

7. SAME.

Evidence as to the arrangement of the election districts was properly received.

8. SAME.

The poll lists were properly given in evidence.

9. SAME.

The evidence as to the number of legal voters in the town was competent.

10. SAME.

The questions relating to defendant's official acts which had some bearing upon his power, influence and patronage, were admissible, on cross-examination, within a reasonable discretion.

11. SAME.

Where the defendant makes reputation a subject of inquiry, the people have the right to put before the jury what that reputation is, though it includes the ability to influence and control elections.

12. SAME.

Statement of person in charge that registry lists could not be seen without an order from defendant was competent, especially in view of defendant's subsequent admission that he was acting under his orders.

13. SAME.

Proof that an order of the court, in the proceedings to obtain access to the several lists, was served upon the chairman of the board in the first district, and what was stated to him at the time, was proper.

14. SAME.

Exception to evidence of declarations by defendant to the witness in a conversation through the telephone, when he did not know defendant or recognize his voice, was good.

15. SAME.

But this error was cured when defendant, on the stand, gave his version of the same conversation.

16. SAME.

Proof of the absence of an alleged conspirator from other important duties, to attend the registry board, though a somewhat remote circumstance, cannot be said to be a prejudical error.

17 APPEAL—EVIDENCE.

The statement of inadmissible testimony, not called for by any question of the prosecution, is not error in the absence of a motion to strike it out.

Appeal from judgment of the general term of the supreme court in the second judicial department, entered upon an order which affirmed a judgment of the court of oyer and terminer of Kings county.

Matthew Hale, Edward C. James, Albert C. Tennant and Geo. W. Roderick, for appellant.

Edward M. Shepard and Benjamin F. Tracy, for respondent.

O'BRIEN, J.—The defendant and the three inspectors of election of the first election district of the town of Gravesend were indicted jointly for a violation of certain provisions of the law governing elections and the registry of voters, preparatory for the general election of November, 1893. Laws of 1892, chap. 680.

Briefly stated, the charge was that the three inspectors, constituting the registry board, having met and organized, subsequently made and completed a list of voters and certified the same, willfully and feloniously neglected and refused to have three certified copies of the same at all reasonable hours accessible to the public for examination, and for making copies thereof, but on the contrary caused the same to be concealed from the public and kept so that they were not accessible for examination or for making copies thereof.

The charge against the defendant was that he willfully, mali-

ciously and feloniously procured the other defendants, members of the board of registry, to so conceal the lists and to neglect and refuse to cause the lists to be accessible to the public for examination and for making copies of the same, by his aid, counsel, command and assistance. The defendant was tried separately and convicted, and the judgment affirmed by the supreme court.

In view of the able and exhaustive examination that the case received in the court below upon appeal it is thought to be unnecessary to refer at much length to the vast mass of facts produced at the trial bearing more or less upon the issue though relating to many subjects and events that appear in the enormous record that accompanies the appeal.

These facts will doubtless be of interest to some future historian of the locality, or of the public events with which they are connected, as they illustrate a most singular condition of things in local government and an extraordinary individual career; but it is believed that a very brief and general reference to a few of the leading ones is all that is essential to the disposition of the questions of law which (alone) we have the power to review. It is important, however, to get a clear view of the statute law that underlies the charge and the judgment. The thirty-first and thirty-second sections of the Election Law, which has been referred to, provide for the time and place of the meeting of the inspectors of election in each district in towns, as a board for the registry of voters, and the manner of preparing the lists. The next section directs the inspectors at the close of each meeting, as a board of registry, to append to their list a certificate of the effect that such list, as it then is, is a correct list of all persons qualified to vote in the district at the next election whose names the board is required by law to place thereon. The remainder of the section contains the provision which it is claimed was violated by the inspectors in this case and reads as follows:

"Each such list, so certified, shall remain in the custody of the chairman of inspectors, until the close of the polls on election day. At each meeting of the inspectors for registry, or during the next following secular day, the inspectors shall make three certified copies of such list and certificate, one of which shall forthwith be conspicuously posted in the place

where such meeting shall have been held, and one shall be retained by each of the other two inspectors, until the close of the polls of such next election. Such list and registry of voters, and the certified copies thereof, shall at all reasonable hours be accessible to the public for examination or for making copies thereof."

The penalty for neglecting or refusing to obey this statute, on the part of the board of registry, is thus 'defined by a provision of the Penal Code:

§ 41c. Any member or clerk of a registry board who willfully violates any provision of the election law relative to registration of electors, or willfully neglects or refuses to perform any duty imposed on him by law, or is guilty of any fraud in the execution of the duties of his office, shall be punishable by imprisonment for not less than two and not more than ten years."

These provisions, however, apply to the members and clerks of registry boards, and as the defendant was neither, the charge could not be sustained without the aid of another provision of the same Code which reads as follows: "§ 29. A person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids or abets in its commission, and, whether present or absent, and a person directly, or indirectly, counsels, commands, induces or procures another to commit a crime, is a principal." The learned counsel for the defendant contends that this section does not apply to the charge contained in the indictment and was not intended to apply to it since the defendant would be guilty of nothing higher than a misdemeanor in case he had actually violated other and apparently more impoptant provisions of the law, or had actually destroyed the registry lists himself. It is quite true that the penalties prescribed by the statute for violation of the several duties and obligations imposed upon election officers and others have not been adjusted with a very nice regard to what would seem to be the relative importance of each offense. The counsel's argument might very properly have been addressed to the legislature while engaged in framing the law, and if it had a special provision would doubtless have been inserted for the punishment of the special offense charged in the indictment in

order to take it out of the operation of the general law. But the language of section 29 is so clear and comprehensive that any attempt now to take the offense of which the defendant was convicted out of it, by judicial construction would be useless.

The contention is. also made that it was legally impossible for the defendant to commit the offense charged since he was not an inspector of election or other registry officer. He could not, of course, be guilty of those acts charged in the indictment against the ispectors, involving neglect of official duty and other misconduct as public officers, since he had no duty to perform with regard to the registry lists. But it was possible to induce and procure the inspectors to commit the offense charged against them by command, counsel or advice, and that is the precise offense of which he was convicted. The argument for the defendant on this branch of the case goes to the full extent of asserting that no legal offense whatever was committed by the defendant, though all the allegations in the indictment be taken as true. He who by command, counsel or assistance procures another to commit a crime is, in morals and in law, as culpable as the actual visible actor himself, for the reason that the criminal act, whatever it may be, is imputable to the person who conceived it and set the forces in motion for its actual accomplishment. The fact that he may, for some reason, be incapable of committing the same offense himself is not material so long as it can be traced to him as the moving cause by instigating others to do what he could not do himself. This was the rule of the common law and it has been applied to offenses like this under special statutes. People v. Bliven, 112 N. Y. 79; 20 St. Rep. 486; State v. Sprague, 4 R. I. 257; State v. Jones, 83 N. C. 605; U. S. v. Snyder, 14 Fed. Rep. 554; U. S. v. Bayer, 4 Dillon, 409; 1 Hale P. C. 629; 1 Hawk. P. C. chap. 41, § 10; 1 Arch. Crim. Pr. (Pom. ed.) 998; State v. Comstock, 36 Iowa, 265; People v. Chapman, 62 Mich. 280.

Numerous questions were raised, discussed and decided at the trial in regard to the organization of the court and the form and sufficiency of the indictment. There was a motion to quash, a demurrer to a motion in arrest of judgment and the decision in each case was in favor of the People. In so far as these various

proceedings raised any question not already considered and not embraced in the exceptions which will be noticed hereafter, they do not require any special discussion. Nor is it important now to decide whether the decisions made in these motions and proceedings at the trial were all reviewable in this court, since, after a careful examination, we are satisfied that they do not present any substantial question and the objections thus raised have been fully and quite satisfactorily answered in the opinions below.

The remaining questions arise upon exceptions taken in the course of the trial and they grow out of the mode of proving the charge which was adopted by the prosecution. There was no direct evidence that the defendant counseled or advised the inspectors to conceal the lists or otherwise violate the law. What the prosecution attempted to show was a criminal conspiracy or general scheme, in which many public officials were engaged, for the purpose of casting a large fraudulent vote at the election, and that the concealment of the registry lists from the public, prior to the election, was, or became, a necessary part of the scheme. No conspiracy was charged in the indictment, nor was it necessary, since the conspiracy, if shown, was evidence in support of the charge stated, from which the jury might find the main fact in issue, namely, that the defendant did counsel, advise and abet the unlawful acts of the inspectors.

Here the inquiry necessarily took a very wide range. To enumerate all the various facts and circumstances adduced in support of this theory, and which were claimed to have some direct or remote bearing upon the issue, would extend this discussion beyond all reasonable limits and would aid but little in giving a clear understanding of the case. It will be quite sufficient to state, in as brief a manner as possible, a few of the most prominent facts and circumstances which the evidence tended to establish, and which, when connected together, it was claimed, pointed directly to the truth of the charge against the defendant.

The town of Gravesend, though really a suburb of the city of Brooklyn, had no other local government than that of a rural town in this state, with the possible exception of a large police force, which became necessary from the nature of the business conducted there and from the fact that during the summer sea-

son a very large number of people made it a resort for pleasure and entertainment of various kinds. In 1890 the town board, of which the defendant, as supervisor, was the presiding officer, divided it into six election districts. The division was so arranged that all the districts converged in the town hall, a building seventy-eight feet long and thirty-seven feet wide, situated in the village of Gravesend. In this building the registry lists were prepared and the vote cast for the entire town. This situation was peculiarly favorable for the purpose of bringing all the machinery of elections under the influence and control of a single mind, especially when that mind dominated all the business and political interests in the town.

That the inspectors, not only in the first district, but in the other five as well, willfully neglected and refused to give the public access to the lists or an opportunity to copy them, and that they in fact concealed them, was established by abundant evidence. There was not only failure and neglect on their part to perform the plain and simple duty enjoined by the statute, but active opposition and obstruction to all attempts by parties interested in the result of the election to inspect or copy the lists. For this purpose various devices and expedients were resorted to tending to show that they were all acting in furtherance of a common plan and for the accomplishment of a common purpose.

When all efforts in that direction had failed, Mr. Gaynor, who was a candidate for justice of the supreme court to be voted for at the election, applied to the courts for the purpose of compelling the performance of this duty by the inspectors through the appropriate judicial process. The defendants retained counsel to resist these proceedings, and they were resisted and defeated by means of technical objections, and the active interest taken by the defendant in defeating all proceedings in the courts to give the public access to the lists, although he was not a party to them, was a circumstance of much significance. Moreover, in the course of the proceedings he made an affidavit to be used in opposition, and which was so used, in which he stated, among other things, that he had examined the lists and that they contained no fraudulent names. Considering the state of the registry, as it then existed, this statement, and the

purpose for which it was made, furnished some evidence of the defendant's knowledge of the manner in which the lists were made, and, generally, of the common end in view. The defendant's active participation in hindering and obstructing any access on the part of the public to the registry lists, and in preventing any fair scrutiny of the vote as it was being cast, was shown by other acts amounting to a great abuse of power. The defendant, being the chief of police and chairman of the town board, had the charge and control of the town hall, where the registry was made and the election held. The efforts of Mr. Gaynor to procure copies of the registry lists continued for several days up to the election, but without success. A day or two before election he sent a large body of men to the hall for the purpose of obtaining access to the lists and making copies. They were all driven from the hall, some of them beaten, and most of them arrested and imprisoned. On the day of the election another body of the candidate's friends and supporters went to the place where the election was being held for the purpose of watching the proceedings and scrutinizing the vote. These men fared even worse than the copyists. The time, manner and circumstances of these arrests of many persons, without cause, proved the ability of the defendant to wield absolute power, and indicated an utter disregard for personal rights and contempt for justice and law. The defendant was the leading spirit and moving power in all these proceedings, aided, as he was, by the police and justice of the peace wha issued the process under which the arrests were made, all, evidently, under his control and influence.

Another important fact was established by evidence quite persuasive and convincing. The registry lists were beyond all doubt fraudulent. They contained a great number of names that did not represent legal voters in the town, or even actual residents, and the vote at the election as reported and certified by the canvassers was also, though perhaps not correspondingly, fraudulent.

The enumeration of census taken under the authority of the state in February, 1892, showed that the total population of the town, including women, minors and aliens, was 8,343. There

is no reason to believe that during the period of less than two
years that elapsed between this enumeration and the election
in question, there was any substantial increase in the number
of actual voters.    The registry lists, however, contained
6,580 names, and the total vote reported was 3,676,

Aside from the inferences to be drawn from these figures, it
should be observed that there were numerous names on the reg-
istry without any sufficient designation of the place of residence,
and the poll list, kept by the inspectors, showed that during the
progress of the voting, at frequent intervals, blocks of names
were recorded in suspicious alphabetical order as voting, and
other strange coincidences appeared that could not, or at least
would not be likely to, exist in the record of an honest election.

The ultimate end aimed at and attained, of course, involved
many other and perhaps more grievous offenses against the
law than that charged in the indictment.    It required the co-
operation, not only of the inspectors in the several districts, but
also the police and many of the other town officers.    The fact
that so many public officers were at the same time, in the same
way and by the same means, either actively promoting or con-
niving at a scheme to produce a false result of the election, sug-
gested the presence of some central figure and some controlling
mind as the author; and all the circumstances pointed to the de-
fendant as that person.    He alone had the power, the means
and the motive.

The singular position of power and influence which he held in
the town was an important fact in the chain of circumstances.
It would be quite tedious to enumerate all the various offices
that he held with the important power attached to them.    It
is within the limits of the evidence, and sufficient to say that
there is scarcely any power of local government that can be
exercised ni a town, whether administrative or political, that
was not concentrated in his person; and even the judicial power,
as represented by the local magistrates, was subject to his in-
fluence.    This sufficiently appears by the wholesale arrests of
the watchers and other persons on and before the day of the elec-
tion.    In a town which contained such places of resort as Coney
Island and Sheepshead Bay, private busniess centered largely
in hotels, saloons, theatres, race courses and other forms of

amusement or entertainment, and it was all so far dependent upon police protection and official favors as to add greatly to this power and influence.

He was the superintendent of the Sabbath school of the Methodist church, and seems to have exercised a potent influence upon the religious life of the people. He had been elected supervisor of the town during eight successive terms unanimously. During nearly all this time he controlled the politics of the town. Whatever cause he favored and whoever the candidates that he supported were, the vote of the town was recorded in that way. Whether the election was general or local and whichever of the two great political parties that he supported, the vote was so nearly unanimous that way as scarcely to conceal the fact that it represented, in a great degree at least, the will of a single man. A curious instance of that kind occurred at the presidential election of 1888. Prior to that time he had been attached to the democratic party, but in consequence of some disagreement with the party organization in the county, he supported the republican candidates that year, and they received substantially the unanimous vote of the town. The same result was in a great measure secured in the same way in the two subsequent state elections. In the election of 1893 he was supporting the democratic candidate, and the circumstances indicated that he was interested and anxious to make this support as effective as possible. The possession of this enormous power for so long a period naturally made him ambitious to retain it and intolerant of all opposition.

Another fact appears which tended to promote the success of the political measures and candidates which he favored. There was really no division of the voters upon party lines. There was in the town, it is true, what was called a republican organization, as well as a democratic organization, but the evidence tended to show that the defendant so controlled both that neither was able or willing to make any earnest or effective opposition to his wishes at the polls.

These facts and circumstances, with others appearing in the record, embracing other facts and declarations of the defendant and the acts and declarations of his alleged co-conspirators, or some of them, were all submitted to the jury under a very fair

charge, and the verdict must be taken as establishing the truth of the charge, which was the main fact in issue, that the defendant did aid, abet, counsel and advise the inspectors in the misconduct and neglect of duty stated in the indictment.

The exceptions taken at the trial and now urged as ground for reversal remain to be considered. The record contains many that are obviously without merit. It will be necessary to notice only the most important ones that appear upon the briefs of counsel and were discussed at the argument.

Many of those exceptions were taken to proof by the prosecution of acts done or declarations made by others claimed to have been engaged in the alleged conspiracy, but not in the defendant's presence. When a conspiracy is shown, or evidence on the subject given sufficient for the jury, then the acts and declarations of the conspirators, in furtherance of its purpose and object, are competent, and in case like this it is not necessary, in order to make such proof competent, that the conspiracy should be charged in the indictment. Roscoe's Crim. Ev. (8th ed.) 432; 1 Greenl. Ev. § 111; 4 id. § 94; People v. McQuade, 110 N. Y. 306; 18 St. Rep. 288; Smith v. Nat. Ben. Soc., 123 N. Y. 85; 33 St. Rep. 67; Logan v. U. S., 144 U. S. 263; Com. v. O'Brien, 140 Pa. St. 555; Queen v. Most, L. R. (7 Q. B. D.) 244; People v. Kief, 126 N. Y. 661; 37 St. Rep. 477; People v. Bliven, 112 N. Y. 79; 20 St. Rep. 486; Spies v. People, 122 Ill. 1, 224, 228-9.

The circumstances of the arrest of the persons at the town hall who were in search of the lists or watching the election were admissible, since, upon the evidence, they could be attributed to the defendant, at least so far as they transpired in his presence, or so far as the acts were done by his procurement. That part of the proof which related to the acts of others, cooperating with the defendant and in furtherance of the common purpose, was also competent upon the principle already stated.

Proof was given by the prosecution in regard to the several public positions held by the defendant, the receipt of large sums of money as supervisor and also the sale of liquors by saloons on Sunday. The power that the defendant wielded through public offices or through the receipt and disbursement of large sums of money became, under the circumstances, a proper inquiry.

It was not competent to show that he misappropriated the money, and no attempt of that kind was made, but it was admissible only to show that the defendant possessed power and patronage that might probably influence others; and proof of the relations existing between the keepers of saloons, representing a large number of people and extensive business interests, and the chief of police, though, perhaps, somewhat remote, is not, under the circumstances, reversible error.

So, also, it was competent to show the situation of the several election districts and their relation to the town hall, where the registry was made and the votes cast. The incidental fact that the defendant participated in the division as a public officer could not be imputed to him as an offense and the trial court confined its scope to a mere description of the arrangement made by law for registering and casting the vote. In this view the proof was admissible.

The objections to the poll lists given in evidence by the prosecution were not well taken. The alleged conspiracy was without point or motive unless the registry and the vote certified were fraudulent, and hence the poll lists kept by the inspectors and which showed how the vote was made up had a direct bearing on this questoin. It was for the jury to say whether, under the circumstances, a large fraudulent vote could have been registered and reported without the knowledge or connivance of the inspectors and the defendant. The inquiry as to the number of legal voters actually residing in the town was also involved in the issue. The defendant himself testified on that subject and claimed they had increased since the vote of previous years, and, therefore, the poll lists of these years had some bearing on the question and the ruling admitting them was not error. This class of evidence could not have been admitted to show that the defendant may have been gulity of some other offense or wrongdoing not charged in the indictment. But if it had a bearing on the issue involved in the trial it could not have been excluded merely because it tended to justify such an inference.

The defendant was a witness on his own behalf at the trial. On cross-examniation various questions were propounded to him which were objected to by his counsel and admitted under

exception.   The scope of the cross-examination was largely,
within the discretion of the court.   The questions related to
various official acts in the administration of the affairs of the
town and connected with the numerous offices which he held,
but they all had some bearing upon the power, influence and
patronage that he wielded and the means at his command to
influence others, whether individuals or public officials.   Some
of the questions called for a description of the position which
he held in politics and his influence and control the action of
both political organizations.   It was proper to give the jury as
clear an idea as was possible of the defendant's political power
and of his ability to influence whatever result he desired at elec-
tions, and for that purpose the questions were admissible within
the limits of a reasonable discretion.

The defendant gave proof of his good character by some of the
most prominent business men in the county.   He was evidently
what might be termed a popular man, who had many friends.
He had the power to retain them and to increase their number.
Those witnesses testified that 'his reputation was good.   On
cross-examination various questions were asked  and answered
under objection and exception with respect to his political power
and influence, or rather what the witness had heard on that
subject from the speech of people.   It may have been improper
to prove the defendant's position in that way as an affirmative
fact.   But there was really no question about the defendant's
great power, and it does not appear that the evidence was re-
ceived for that purpose.   The defendant having made reputa-
tion a subject of inquiry, the People had the right to put before
the jury just what that reputation was, though it incuded the
ability to influence and control elections.

The People called a witness who testified that when the regis-
try lists were nearly completed he went to the town hall, the
place where they were by law required to be kept, and there
found a man in charge, who by his dress he assumed to be a
policeman, and told him that he wanted to see the lists in order
to make copies, stating fully his purpose and who had sent him.
The person in charge told him that he could not see the lists
without an order from defendant.   It must be remembered that
the defendant as head of police had charge of the hall, and it

was competent for the prosecution to prove the efforts made to see and copy the lists and the failure of these efforts. What the person in charge said was a part of this proof and at least tended to show that the application was not successful. But even if his statements were objectionable they were subsequently made competent by proof of the defendant's admissions that he was acting under his orders. The prosecution called another witness and proved by him that he served an order of the court, in the proceedings to obtain access to the several lists, upon the chairman of the board in the first district, and he was permitted to state also what he said to him at the time of making the service. This was proper. What was said to the chairman at that time in regard to the purpose of the service was notice to him that the lists were required and part of the res gestae. But the witness went further and testified that he also said to him that he had just served a like paper on another member of the board and that that member said he was going to hand the papers to the .defendant. This was inadmissible, but it was a voluntary statement of the witness, not called for by the real spirit or purpose of the question, and under a rule which the court had adopted in the course of the trial in presence of all the counsel, it would have been stricken out had a motion for that purpose been made. In the absence of such a motion the defendant cannot complain that the statement was injurious.

A witness for the People testified to very important declarations made by the defendant to him in a conversation through the telephone. A proper objection was made and exception taken. It appeared that the witness did not then know defendant or recognize his voice. In the absence of some other proof this exception would have been good. Murphy v. Jack, 142 N. Y. 215; 58 St. Rep. 458. But the witness further testified that he heard an affidavit made by the defendant, and read in his presence, in which he stated that he had the conversation by telephone with the witness and that there was but one. This statement was made without any objection that the affidavit itself was the best evidence of what it contained, and was in fact drawn out by defendant's counsel. Subsequently the affidavit put in evidence by the defendant, and when on the

stand he gave his version of the same conversation, which differed from that of the witness, the other party to it.   The objection was in this way cured and the conversation was properly in the case.

It appeared that Michael Ryan was an inspector for the second district and principal of the school at Coney Island, having under his charge six other teachers.   One of these teachers was called, who testified for the People to the effect that Ryan was absent for three days prior to the election, during the struggle to obtain access to the registry lists, and she also gave some testimony tending to show the number of scholars in the school.   The evidence was received under defendant's exception.   Of course this testimony had no bearing whatever upon the question of the true number of legal voters in the town, and there is nothing to show that it was offered or received for such purpose.   Ryan being a member of the registry board, was one of the alleged conspirators.   The fact that he was absent at that particular time, when he had important duties to perform at the school, was a circumstance, though perhaps somewhat remote, proof of which cannot be said to be error prejudicial to the defendant.

There are many other exceptions in the record, but they are all covered by the views expressed in regard to those already specifically noticed and do not require further consideration.

While we have discussed the questions thus raised at some length it is proper to say that many of them fall within the statute which directs this court to give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties.   Code Crim. Pro. §§ 542, 684.

We have examined the case in view of the fact suggested by the learned counsel for the defendant that the trial took place in the midst of great public excitement.   This was, perhaps, to be expected from the character of the events which took place at and just preceding the election and the disclosures which followed.   The situation, doubtless, demanded the application at the trial of all the safeguards which the law interposed for the protection of the defendant's rights, and it is evident from a careful examination of the case that they were all guarded with

vigilance and sedulous care. The case was peculiar and the mode adopted for proving the charge somewhat unusual. While in theory and in law there can be no objection to proving a crime by proof of a conspiracy to commit it, yet, in practice, that method of establishing the issue is liable to give the prosecution an undue advantage. Neither the scope, limits or purpose of the alleged conspiracy, nor the actors in it, are accurately defined by any pleading in the case, and the accused has to meet at the trial a multitude of inculpatory facts claimed to be relevant to the main fact in issue. There is always danger in such cases that the specific charge will be lost sight of and disappear in the mass of collateral facts growing out of other subjects, and that the defendant may be convicted because of other wrongdoing with which he was not charged.

But we think that in this case the learned trial judge kept the real issue constantly and clearly before the jury in the rulings and in the charge. He gave them very clear and careful instructions with respect to the nature and character of the circumstantial evidence which the law required in order to prove the main fact. They were instructed to acquit the defendant unless satisfied beyond a reasonable doubt that he counseled, advised, aided, abetted or procured the inspectors of the first district to do or omit to do the things charged against them in the indictment, even though satisfied that he did advise and procure the inspectors of any or all the other districts to neglect the duty imposed upon them by the statute. And further, that unless the identical charge against the defendant contained in the indictment was established, beyond a reasonable doubt, he should be acquitted, though the evidence in the case might show, or tend to show, some other violation by him of the law, and that the facts and circumstances adduced were to be considered only so far as they had a bearing upon or were revelent to prove the main fact charged. The jury could not have been misled as to the real issue or as to the nature and quality of the circumstantial evidence required to sustain it on the part of the People.

The appeal presents no    substantial question that would justify this court in interfering with the verdict, and the judgment must, therefore, be affirmed.

All concur.

Judgment affirmed.