## COURT OF APPEALS

### Dec. 31, 1912.

# THE PEOPLE v. THOMAS STORRS.

## (207 N. Y. 147.)

(1.) FORGERY *—CONSPIRACY—CONVICTION OF ATTORNEY FOR FORGING AT SOLICITATION OF A CLIENT AND IN CO-OPERATION WITH HER, AN INSTRUMENT GIVING HER A LARGER PART OF HER DECEASED HUSBAND'S ESTATE THAN SHE WOULD HAVE RECEIVED UNDER HIS WILL— EVIDENCE—ADMISSION OF STATEMENTS MADE BY WIDOW, AS CO-CONSPIRATOR.

Defendant was convicted of forgery in the second degree upon the charge that he and another forged an instrument in writing with the intent to defraud. It was charged that the person indicted with him but tried separately, being dissatisfied with the testamentary provision in her behalf under her husband's will, procured the defendant to concoct, write out and sign the instrument in question, in order thereby to obtain a larger portion of her deceased husband's estate than she would otherwise receive. The prosecution was allowed to prove acts done and words spoken by the widow in the absence and without the knowledge of the defendant, on the ground that they constituted the conduct and declarations of a co-conspirator in the crime and were, therefore, equally binding upon him as upon her. The evidence shows that defendant continued to act as her attorney down to the time of a trial involving the validity of the instrument in question. *Held*, that the conspiracy had not terminated at the time of the acts and declarations as to which such testimony was given, and the evidence was, therefore, competent.

(2.) SAME—ADMISSION OF PAPERS WRITTEN ON TYPEWRITER OF ATTORNEY TO SHOW THAT INSTRUMENT WAS WRITTEN ON SAME MACHINE.

For the purpose of showing that the body of an instrument was written upon a typewriter possessing peculiar mechanical characteristics, which established its identity by means of the character of the work produced thereon, it is proper to introduce in evidence

---

* See Note on Forgery, Vol. 24, page 351.

another paper prepared upon the same typewriter showing the same characteristics.

(3.) SAME—ERRONEOUS EXCLUSION OF STATEMENT, CONFIRMATORY OF DISPUTED INSTRUMENT, MADE BY DECEDENT DURING HIS LIFE TIME.

A statement made by a deceased person against the interest of the declarant is admissible where the party against whom the declarations are offered claims as a representative of the person making them as an executor or administrator, or is identified in interest with him.  (*Paige* v. *Cagwin*, 7 Hill, 361, distinguished.)

(4.) SAME.

The paper alleged to be forged set out, among other things, that the husband had given the wife a touring car during his lifetime. Defendant offered to show that the deceased had stated to him at about the time the paper bore date that he had given his automobile to his wife.  This evidence was excluded.  *Held* error; that this declaration was confirmatory of the truth of the recitals in the disputed document, and, therefore, tended to some extent to establish its genuineness.

*People* v. *Storrs*, 152 App. Div. 901, reversed.

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 9, 1912, which affirmed a judgment of the Cattaraugus County Court, rendered upon a verdict convicting the defendant of the crime of forgery in the second degree.

The facts, so far as material, are stated in the opinion.

*William W. Waring* for appellant.    The verdict of the jury is clearly against the weight of evidence, and the facts and circumstances disclosed by this record are not sufficient to uphold the judgment of conviction.    (Card v. Moore, 68 App. Div. 327; People v. Fitzgerald, 156 N. Y. 253; People v. Kelly, 11 App. Div. 499; People v. Bennett, 49 N. Y. 137; People v. Owen, 148 N. Y. 648; People v. Doneburg, 51 App. Div. 613.)    It was error for the court to admit a specimen of typewriting as a standard of comparison only.    (Miles v. Loomis, 75 N. Y. 288; Peck v. Callaghan, 95 N. Y. 73.)    It

was error for the court to permit proof of statements made and acts committed by Cynthia V. Smith, in the absence of the defendant in this action, after the execution of the disputed document which is alleged to have been forged. (1 Greenl. on Ev. [13th ed.] §§ 110, 111; Ormsby v. People, 53 N. Y. 472; Rutherford v. Schattman, 119 N. Y. 137; Lent v. Shear, 160 N. Y. 462; People v. McKane, 143 N. Y. 455; People v. Peckens, 153 N. Y. 576; People v. McQuade, 110 N. Y. 254; Cuyler v. McCartney, 40 N. Y. 221; People v. Alderdice, 120 App. Div. 368; People v. Hoyt, 145 App. Div. 695.) The court erred in excluding the evidence of the witness Johnson, to the effect that Milan J. Smith, deceased, stated to the witness in the summer of 1909 that he had given his automobile to his wife. (Wigmore on Evidence, §§ 1455–1469; McKelvey on Evidence, 254; Lyon v. Ricker, 141 N. Y. 225; Bingham v. Highland, 53 Hun, 631; Chadwick v. Fonner, 69 N. Y. 404; People v. Blakely, 4 Park. Cr. 176.)

*George W. Cole, District Attorney,* for respondent. The evidence of Mrs. Smith's proposal to Jane Tillitson to falsely testify to the execution of the instrument was competent as an act of a co-conspirator. (Whart. on Crim. Ev. [10th ed.] 1430, 1437, §§ 698, 699; Underhill on Crim. Ev. [1st ed.] §§ 492, 493; People v. McKane, 143 N. Y. 455; People v. Peckens, 153 N. Y. 576; People v. Hall, 54 App. Div. 57; 2 Bishop on Crim. Proc. § 230.) No error was committed in excluding the offer to prove prior declarations of M. J. Smith to the effect that he had given the automobile to his wife. (2 Wigmore on Evidence, §§ 1459, 1461, 1462; People v. Molineux, 168 N. Y. 264; Clason v. Baldwin, 56 Hun, 326; Lyon v. Ricker, 141 N. Y. 225; People v. Blakely, 4 Park. Cr. 176.) No error was committed in the admission of evidence that the disputed document was prepared on the defendant's typewriter. (3 Chamberlayne on Ev. § 2185;

Huber Mfg. Co. v. Claudel, 80 Pac. Rep. 960; State v. Freshwater, 85 Pac. Rep. 447; Stitzel v. Miller, 95 N. E. Rep. 53.)

WILLARD BARTLETT, J.   The defendant has been convicted of the crime of forgery in the second degree, under an indictment charging him and one Cynthia Smith with having forged a certain instrument in writing with intent to defraud Irving E. Worden, as executor of the last will and testament of Milan J. Smith, deceased.   The defendant was tried separately.   Cynthia Smith is the widow of Milan J. Smith, by whom the instrument in controversy purports to have been signed.   The instrument with the exception of the signature is in typewriting and bears date the 21st of August, 1909, which was less than a month before the death of Mr. Smith.   It recites that he had agreed with his wife Cynthia that if she would marry him he would settle upon her a sum of money or property as her separate estate, and that he had given her the diamonds she wore and household goods and furniture in his house, and purchased and given her his touring car, and delivered to her notes in the sum of about $3,400, which with the touring car, diamonds and furniture aggregate about the sum of $6,000.   It further recites that the signer has notes in the Exchange National Bank and money on deposit there, and has made his will setting apart to his wife the house in which they live and a sum of money for her use which he deems inadequate to recompense her for her interest in and service to him manifested in his sickness; and in consideration of her said marriage with him and his agreement to set apart for her a sum of money, the instrument goes on to provide that he does thereby sell, assign, transfer and set over enough of his notes which he now owns in said bank and of the money therein to make up the sum of $10,000, appraising the touring car at $2,000, the notes delivered at $3,400, the household goods, carpets and furniture at $700, and the diamonds at $350, and he thereby directs the bank or those in

possession to deliver to his wife out of said securities, notes and money of her own choosing a sum sufficient to make up, together with the articles mentioned, the sum of $10,000, which he thereby gives her as a marriage settlement, and appoints her his agent to collect or settle the same.

Cynthia Smith was the second wife of Milan J. Smith. He married her on September 8, 1908, about one year after the death of his first wife. She had been married twice before, one of her husbands being dead and the other divorced. Milan J. Smith died on September 5, 1909, leaving a will and codicil executed in that year by which he gave to his wife, providing she did not remarry, the use of his dwelling house, stable and grounds at Portville in Cattaraugus county during her lifetime, and the income derived from the sum of $6,000, out of which were to be paid taxes, insurance and the expense of necessary repairs.

The defendant is a practicing lawyer now over sixty-seven years of age, residing at Olean. The theory of the prosecution was that Mrs. Smith, being dissatisfied with the testamentary provision in her behalf under her husband's will, procured the defendant to concoct, write out and sign the instrument in question, in order thereby to obtain a larger portion of her deceased husband's estate than she would otherwise receive. The issue arising upon the defendant's plea of not guilty was closely and bitterly contested upon the trial. In behalf of the prosecution evidence was introduced tending to show that the body of the instrument was written upon a typewriter belonging to the defendant, possessing peculiar mechanical characteristics which established its identity by means of the character of the work produced thereon. Several business men who were familiar with the handwriting of Milan J. Smith by reason of their dealings with him testified that in their opinion the signature to the instrument in question was not genuine; and there was also opinion evidence from a hand-

writing expert to the same effect. On the other hand, the defendant utterly denied all part or lot in the preparation of the paper. He produced at least six witnesses who testified to having seen Mr. Smith actually sign the document; and a large number of checks bearing Mr. Smith's unquestioned signature were introduced for purposes of comparison in order to satisfy the jury of the genuineness of the signature to the instrument in controversy.

It was important if not essential to the case for the prosecution to prove that the body of the document was produced by the use of the defendant's typewriting machine. For this purpose the district attorney was permitted, over the defendant's objection and exception, to introduce in evidence another paper prepared by a witness who was at the time the defendant's law partner, upon the defendant's typewriter. The contents of this paper were in nowise relevant to the issue on trial, and the paper was received, as the learned county judge stated, not so much as a standard for the comparison of handwriting as upon the principle that where an impression is made upon paper, wood, leather or any other plastic material by an instrument or mechanical contrivance having or possessing a defect or peculiarity, the identity of the instrument may be established by proving the identity of the defects or peculiarities which it impresses on different papers.

Section 961d of the Code of Civil Procedure, amended so as to take effect in its present form on February 17, 1909, provides as follows: " Comparison of a disputed writing with any writing proved to the satisfaction of the court to be the genuine handwriting of any person, claimed on the trial to have made or executed the disputed instrument, or writing, shall be permitted and submitted to the court and jury in like manner."

Formerly the comparison of disputed handwriting with unquestionable specimens was permitted only when the latter

had been admitted in evidence for other purposes, as relevant
to the issue, or without objection.   (Miles v. Loomis, 75 N. Y.
288.)   The history of subsequent legislation on the subject
and the interpretation of such legislation by the courts will
be found fully narrated and explained in the opinion of Judge
WERNER in People v. Molineux (168 N. Y. 264, 16 N. Y. Crim.
120, 318).   I think it may well be doubted whether type-
writing can be deemed *handwriting* within the meaning of the
existing statute.   Nevertheless, I think the law sanctions the
reception of the evidence in question, substantially on the
theory adopted by the trial judge.   If the impression of a seal
were in controversy it would surely be competent to show by
other impressions from the same sealing instrument that the
impression was invariably characterized by a particular
mark or defect.   Impressions made by a shoe, for the sole
and very purpose of comparison, would undoubtedly be com-
petent evidence in a prosecution for burglary where it was
sought to identify the accused by means of his footprints.
This evidence is quite analogous.   Typewritten specimens were
similarly received for the purpose of showing that certain
disputed receipts could not have been produced by the type-
writer on which they were alleged to have been prepared, in a
case tried before Vice-Chancellor PITNEY of New Jersey in 1893
(Levy v. Rust, 49 Atl. Rep., 1017, 1025).   There the court
was called upon to determine the character of certain receipts
which were alleged to be forgeries.   To assist him the vice-
chancellor took the testimony of " a gentleman who is employed
by the vendors of type-writing machines to go about the
country and examine type-writing machines, and see whether
they are out of order, and in that way his eye becomes very
acute and quick to discover things that will escape the vision
of a casual observer."   This witness pointed out three defects
in the machine on which the questionable receipts must have
been written.   The period mark was invariably too low; the

letter " s " was " off its feet," and the " u " was placed too far to the left. Specimens of typewriting done by the machine on which the receipts were said to have been written were produced for comparison, and in these specimens none of these defects appeared. Hence, the vice-chancellor concluded that they were written on a different and defective machine and were forgeries.

In the case of State v. Freshwater (30 Utah, 442) a question arose as to whether certain typewritten letters were written by the defendant. He had sworn to several typewritten affidavits which had been filed in the case in support of a motion for a continuance. An expert in typewriting and in the mechanism of typewriting machines was held competent to testify to his opinion that these affidavits and the letters in controversy were written on the same typewriter. Both exhibited indications that they had been prepared by a machine on which the type were defective, broken and out of repair and out of alignment, with excessive spacing. The witness had examined twenty-four typewriting machines in use at Provo City, Utah, where the letters were mailed and but one of these had the same defective type which produced lettering, lining and spacing in exact conformity with these peculiarities in the disputed letters. " He also testified, that while it might be possible for two machines out of repair to have precisely the same defects and to produce the same faulty printing in every respect that characterized the letters and affidavits mentioned, such a thing or coincidence is not at all probable."

The Supreme Court of Kansas, in Huber Mfg. Co. v. Claudel (80 Pac. Rep. 960), expressed the opinion that there may well be peculiarities in typewritten letters, either in the manner of the writing or the character of the letters of the typewriter, which will serve to indicate their origin.

These several cases base the rulings which have been men-

tioned upon the assumption or proof that a typewriting machine may possess an individuality which differentiates it from other typewriters and which is recognizable through the character of the work which it produces. Inasmuch as its work affords the readiest means of identification, no valid reason is perceived why admitted or established samples of that work should not be received in evidence for purposes of comparison with other typewritten matter alleged to have been produced upon the same machine.

The prosecution was allowed to prove acts done and words spoken by the widow, Cynthia Smith, in the absence and without the knowledge of the defendant, on the ground that they constituted the conduct and declarations of a co-conspirator in crime and were, therefore, equally binding upon him as upon her. To justify the reception of this evidence, the district attorney relies upon People v. McKane (143 N. Y. 455), where it was held that proof of the acts and declarations of one conspirator done and uttered in the execution of a common design was admissible against another party to the conspiracy and that it was not necessary that the conspiracy should be charged in the indictment. It is contended in behalf of the appellant, however, that in the present case the acts and declarations permitted to be proved took place after the conspiracy, if there was one, was at an end and its purpose had been fully accomplished; and of course under such circumstances the subsequent acts or declarations of one conspirator are not provable against another. (People v. McQuade, 110 N. Y. 284.)

An examination of the facts, a little more in detail, shows that the conspiracy had not terminated at the time of the acts and declarations in question. The will of Milan J. Smith, in addition to the provisions already mentioned, contained a devise and bequest of the remainder of his estate to his four sons and appointed Irving E. Worden, cashier of the Exchange

National Bank of Olean, as his executor.  In the month of
July preceding his death Mr. Smith executed a codicil in
which he provided that, in case his widow did not occupy the
premises, of which he had given her the use during life, but
rented the same, then her rights, under the will, should cease
and determine, and the estate so given to her should become
a part of his residuary estate.  Some days later the will of
Mr. Smith was offered for probate, and thereupon the defend-
ant Storrs had a talk with the attorney, representing the
executor, in which he stated that he appeared for Mrs. Smith,
that he had just returned from the funeral of his own wife
and desired a little delay in the probate of the will so as to
look into the matter.  Subsequently a demand was made by the
law firm of Storrs & Woodruff, in which the defendant was a
copartner, upon the executor for a delivery to them of the
property mentioned in the alleged forged instrument, which
was then exhibited to the executor, but he refused to deliver
up the property.  Thereupon an action was commenced by
the executor to recover the property of his testator which was
in Mrs. Smith's possession.  Storrs & Woodruff were retained
by Mrs. Smith in that action, and thereupon preparations
were made for trial.  That action was brought on for trial in
September, 1910, and it was during the trial of that action
that the alleged forgery and conspiracy between the defend-
ant Storrs and Mrs. Smith was disclosed by the confession of
Mrs. Tilletson.  Her testimony was to the effect that she lived
at Portville, knew Mr. and Mrs. Smith and knew of Mr.
Smith's death; that she worked out by the day and worked
for Mrs. Smith from time to time; that she knew the defend-
ant Storrs and saw him at Mrs. Smith's house about three
weeks after the death of Mr. Smith; that he had a typewriter
with him and was engaged in the sitting room talking with
Mrs. Smith and writing upon the typewriter; that subseqently
Mrs. Smith called her attention to Exhibit C, which was the

alleged forged paper, and stated that she would do well by her if she would swear to it, "and asked me if I would be willing to swear that I saw Mr. Smith sign the paper." Much other evidence was given upon the subject, from which the claim is made that a conspiracy was entered into between the defendant Storrs and Mrs. Smith by which the alleged forged instrument should be drawn and, through it, she would be able to retain the personal property that she had in her possession belonging to the testator's estate, and also should be able to procure from the executor the money and securities held by him in the bank. This evidence would justify the inference that if there was a conspiracy it continued after the making of the alleged forged instrument. That instrument was made before the presentation of it to Mr. Warden at the time that the demand was made for the money and securities in his possession. The conspiracy did not then terminate, for the reason that Mr. Storrs, through his firm, continued to represent Mrs. Smith in the preparation for the trial of the action that was subsequently brought; and this continued down to the time of the trial and necessarily included the period during which Mrs. Smith endeavored to procure her evidence to sustain the validity of the instrument. At least upon this branch of the case the evidence was sufficient to carry the question to the jury.

It is true that the forgery of the instrument, if it was forged, was committed before the effort was made on the part of Mrs. Smith to procure Mrs. Tilletson to testify in her behalf. But the forgery was one of the steps necessary in order to carry out the conspiracy, if such it was. The intent and purpose of the forgery still continued, with a design through it to obtain possession of the securities in the bank as well as to hold the property that was in her possession. If the conspiracy had terminated with the making of the forged instrument, then of course the evidence

referred to by Mrs. Tilletson would not have been competent as against the defendant. But if the conspiracy continued afterwards, during the time that he was advising her with reference to his preparation for the trial and the procuring of evidence to show that the instrument was executed by the testator in his lifetime, then the acts and declarations of a co-conspirator with reference to the subject-matter of the conspiracy became evidence against him. I shall refer to but a few cases outside of those cited by O'BRIEN, J., in the case of People v. McKane (*supra*).

In the case of State v. Pratt (121 Mo. 566) it was held that where persons have entered into a conspiracy to forge a deed and then to obtain money by mortgaging the land and dividing the money among them, transactions by one conspirator between the execution of the deed and the accomplishment of the further purpose of the conspiracy are admissible in evidence against a co-conspirator on a *prosecution for the forgery*. In this case SHERWOOD, J., in delivering the opinion of the court, says: " The deed in this case, forged in the name of Bishop by Cottrell and his associates, was executed on the 9th day of June, 1893. It is claimed upon this ground that any subsequent transactions regarding the land trade, letters to and from Lesueur, etc., were inadmissible against defendant, because he was not shown to have been a participant in such subsequent transactions. No rule of law is better settled than that a conspiracy being shown and that conspiracy ended, no word of any one of the conspirators can be received as incriminating evidence against any one or more of the others. This rule, however, only applies where the words are merely narrative of a past transaction; *it does not apply where the transaction, the criminal design, is still pending and unaccomplished.* Sometimes it is a nice and difficult question to determine when any criminal design has terminated. In this case, however, no difficulty arises, because the aim and

object of the conspirators evidently was to so use the land, as to which they had acquired a fictitious title, as to divide the proceeds of their ill-gotten gains among themselves, and, until this was done, the design was still inchoate and pending, and as shown by the evidence the conspirators were willing to forge another deed if necessary in order to make their unlawful gains secure." Here, as we have seen, the forging of the deed had been completed, and the charge upon which the trial proceeded was for the forgery. It, however, did not terminate the conspiracy, for the reason that the conspirators designed to raise the money upon the land so deeded by mortgaging the same and then dividing the proceeds. So in the case now under review the forging of the instrument was but one of the steps necessary under the conspiracy to procure the property claimed to have been transferred by the instrument. The obtaining of the property still remained to be carried out under the conspiracy.

In the case of Commonwealth v. Smith (151 Mass. 491) the indictment was for arson to procure insurance. DEVENS, J., in delivering the opinion of the court, says: " Where there is evidence of a conspiracy, the acts and declarations of each conspirator in pursuance of its objects and in furtherance of the common design are admissible against all, is well settled. (Commonwealth v. Waterman, 122 Mass. 43.) The evidence of Arthur B. Kendall's conversation could not be given in evidence without necessarily including that of his brother, and was connected with acts done immediately thereafter by himself and the defendant George T. Smith in reference to the disposition of the trunks, etc. *Even if those declarations or conversations were subsequent to the burning they were still made during the pendency of the criminal enterprise.* They were not recitals of past occurrences, but were connected with acts done evidently to shield the conspirators from the consequences of their crime."

In the case of a larceny perpetrated by two or more, the conspiracy continues so long as the stolen property has not been divided or disposed of according to the plan of the conspirators. (Baker v. State, 80 Wis. 416; State v. Thaden, 43 Minn. 253. See, also, 2 Bishop's New Criminal Procedure, § 230.)

Under the circumstances, therefore, it was proper to lay the testimony as to Mrs. Smith's acts and declarations before the jury to be considered by them if they found the existence of a conspiracy and its continuance up to the time when the acts were done and the declarations were made.

Notwithstanding all that has been said thus far, however, it is manifest that one error was committed upon the trial, of so serious a character as not only to justify but demand a reversal of the judgment. This was the exclusion of testimony offered in behalf of the defendant to the effect that Milan J. Smith had stated to the witness some time in the summer of 1909 that he had given his automobile to his wife. Here was a statement made by a person now deceased against the interest of the declarant, and the defendant was entitled to the benefit of it. It is well settled that the declarations of a deceased grantor of real estate in reference to the title thereto and against his interest, made at a time when he is in possession of the land, are admissible even in an action against a person who claims nothing under the grantor and is not strictly in privity with him. (Lyon v. Ricker, 141 N. Y. 225; Tompkins v. Fonda Glove Lining Co., 188 N. Y. 261.) Cases in other jurisdictions illustrative of this rule asserting the admissibility of the declarations of a deceased occupant of real estate in disparagement of his own title are Marcy v. Stone (8 Cush. 4); Currier v. Gale (14 Gray, 504), and Smith v. Moore (142 N. C. 277).

Professor Wigmore, in discussing this exception to the hearsay rule which permits evidence of declarations against interest,

says that a statement " predicating of oneself a limited interest instead of a complete title to property asserts a fact decidedly against one's interest and has always been so regarded." (2 Wigmore on Evidence, § 1458.) Still more manifestly against interest is a statement which amounts to a denial of any interest whatever in the property—such as is involved in the declarations by the previous owner that he had given it away. This was the character of the declaration attempted to be proved in the case at bar.

It is true that the declaration was that of an assignor of personal property as to whose declarations a different rule applies in this state from that which has been mentioned in the case of a grantor of real property. In New York for many years the courts have consistently adhered to the doctrine originally laid down by the old Court of Errors in Paige v. Cagwin (7 Hill 361) to the effect that the declaration of a vendor of chattels or the assignor of a chose in action made before he parted with his interest therein are not admissible against his vendee or assignee. The rule laid down in Paige v. Cagwin (*supra*) is subject to the exception, however, that where the party against whom the declarations are offered claims as a representative of the person making them as an executor or administrator, or is identified in interest with him, such declarations are admissible. " The declarations of an intestate, or of a testator, touching the title to personal property, or establishing a defense to a claim asserted by the executor or administrator, or a demand against the estate he represents, are constantly received upon this ground." (Von Sachs v. Kretz, 72 N. Y. 548, 555.) It follows that the declaration of Milan J. Smith that he had given his automobile to his wife would be provable by way of defense to a claim by his executor that it constituted a portion of his personal estate; and this being so, we think it was provable in behalf of the defendant in the present action. Any competent

evidence that went to show that the automobile had been transferred by Milan J. Smith to his wife was in derogation of the claim of his executor. It was confirmatory of the truth of the recitals in the disputed document, and, therefore, tended to some extent to establish its genuineness.

The district attorney insists that only such declarations against interest as were made *after* the date of the disputed document could properly be proved, and that the declarations here sought to be proved were not shown to have been made subsequent to the time of the execution of the instrument, if it ever was executed. The exception to the hearsay rule, however, is not thus limited, where the declarations, as in the present case, relate to matters stated in the instrument by way of the recital of past events, which must necessarily have preceded its execution. The document recites the fact that Mr. Smith had previously given his touring car to his wife. The contention of the prosecution was that he had never given it to her at all, and that the instrument reciting the gift was a forgery. It was, therefore, competent to confirm the recital and thus strengthen the probability that the instrument was genuine by proving declarations by Mr. Smith at any time to the effect that he had made the gift. The ruling which denied the defendant this right deprived him of material evidence which could hardly have failed to be helpful to his case; and it is impossible to hold that the defense was not seriously prejudiced thereby.

On account of this momentous error, which is too grave to be overlooked on any theory of appellate procedure in criminal cases, the judgment should be reversed and a new trial ordered.

CULLEN, Ch. J., HAIGHT, VANN, WERNER and HISCOCK, JJ., concur; GRAY, J., absent.

Judgment of conviction reversed, etc.