THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JULIUS JUSKOWITZ and JAMES ANNELLO, Defendants.

Court of General Sessions of County of New York, April 1, 1940.

*Thomas E. Dewey, District Attorney [Bernard Katzen, Assistant District Attorney, of counsel], for the plaintiff.*

*Samuel J. Siegel, for the defendant Julius Juskowitz.*

*Sol H. Eisler, for the defendant James Annello.*

DONNELLAN, J. These are motions made on behalf of the defendants for certificates that it is reasonable that the charge now pending against them in the Court of Special Sessions be prosecuted by indictment, pursuant to the provisions of paragraph (c) of subdivision 1 of section 31 of the Inferior Criminal Courts Act.

In the information filed against them they are alleged to have " induced and attempted to induce the officers, tellers, canvassers and primary election inspectors of the 25th Election District of the 6th Assembly District of the County of New York at the primary election " held on September 19, 1939, to violate the Election Law by making a false canvass and statement of results of the Democratic ballots cast for the officers and candidates for judges of the Court of General Sessions and for candidates of the Democratic county committee. The defendants acted as Democratic watchers at the said primary election. In the said Assembly district there was a contest for the Democratic leadership. The leadership is determined by the vote of those elected as county committeemen. Juskowitz was a watcher in the interests of one candidate, whereas the defendant Annello was a watcher in the interests of an opponent. Their interests, therefore, in the election of committeemen were adverse — one to the other.

The defendant Juskowitz was a city marshal of the city of New York for eight years prior to May, 1939, and is now a licensed auctioneer and appraiser, while the defendant Annello holds no public office but has been employed for the past sixteen years by the Consolidated Edison Company. Neither has ever been convicted of any crime.

Under the act creating the Court of Special Sessions a defendant was entitled to a jury trial as a matter of right, and this provision still applies to all sections of the State of New York, except the city of New York. The provision of the original act providing for a mandatory transfer of misdemeanors from Special Sessions to the grand jury was changed in 1897 by an amendment to the original act, and by virtue of the said amendment, at the present time, a defendant charged with a misdemeanor in the Court of Special Sessions can obtain a jury trial only if a justice of the Supreme Court, or a county judge, or a judge of the Court of General Sessions shall certify that it is reasonable that the charge be prosecuted by indictment (Inferior Crim. Cts. Act, § 31, subd. 1, ¶ [c].) The amendment excluding the city of New York from the rest of the State was brought about by the great number of charges of misdemeanor in the city of New York in which a jury trial was demanded.

There has been a long line of decisions on motions made for certificates to prosecute misdemeanors by indictment, and many of the decisions appear to be at variance with others on practically the same set of facts. Certain general rules have been laid down in the various decisions, but in the final analysis each case must stand upon its own merits and the question presented by each case is whether or not a transfer is reasonable under all the circumstances, and in accordance with all the principles of justice.

" The power to oust a court of jurisdiction which it has acquired is to be exercised with discretion and not arbitrarily." (*People* v. *Wade*, 26 Misc. 585.)

Under the old Liquor Tax Law where the license to traffic in liquor might be jeopardized by a conviction for misdemeanor, it became a general practice to transfer all such cases to the grand jury. Some typical cases are those of *People* v. *Gantz* (41 Misc. 542); *People* v. *Hoenig* (86 N. Y. Supp. 673), and *People* v. *Cornyn* (36 Misc. 135). The granting of such motions was so general that it became more or less a matter of routine.

In *People* v. *Butts* (121 App. Div. 226) the Appellate Division of the Second Department decided that a defendant might appeal as matter of right from an order denying the issuance of a certificate. In that case the defendant was charged with working on a Sunday as an engineer of a locomotive. The Appellate Division reversing, held it was reasonable that the prosecution should be by indictment. Judge JENKS stated: " ' Reasonable ' is a generic word, difficult of adequate definition; but I take it to mean, in such a case as this, just, proper, fair, equitable. So the question is whether it was just and proper that this charge should be tried by indictment, meaning a preliminary investigation by a grand jury and a trial by a court with a jury, and not by a Court of Special Sessions. Without reflecting upon any incumbent of that court, which numbers many competent men, presumably a more satisfactory trial of a cause which may present difficult questions of law and intricate questions of fact, and may be far-reaching in its effect as a precedent, would be afforded by such a certificate."

In *People* v. *Rosenberg* (59 Misc. 342), where the defendant was a pawnbroker charged with conspiracy by false representation, a certificate was denied. The court stated: " The reasons which would justify such a certificate must be something more than the mere preference of the defendant for a jury trial. * * *

" Such applications are largely addressed to the discretion of the court, and each case must be decided largely in the light of the special facts of the case. Without, therefore, attempting to lay down any general rule, it may be said that to warrant the granting

of such an application it should appear either, *first*, that a case presents intricate and complicated questions of fact, rendering a jury trial proper, or, *second*, that it presents difficult questions of law, or, *third*, that a property right is involved; or, *fourth*, that a decision may be far-reaching in its effect and become a precedent which will regulate a matter of general interest; or, *lastly*, that the case is of exceptional character and that the defendant, for some special reason, cannot have a fair trial in the Court of Special Sessions."

The certificate was also denied in the case of a chiropractor charged with unlawfully practicing medicine (*People* v. *Sabourin*, 166 Misc. 23); also in the case of a defendant charged with a violation of section 148 of the Public Welfare Law, obtaining relief by false representation (*People* v. *Currao*, 166 Misc. 374); also in the case of detectives charged with conspiracy to obstruct justice in violation of section 580 of the Penal Law (*People* v. *Taffer*, 170 Misc. 688); also in the case of a defendant charged with selling contraceptives (*People* v. *Byrne*, 163 N. Y. Supp. 680); also in the case of a defendant charged with possessing slot machines (*People* v. *Porter*, 108 Misc. 100), and it was also denied in *People* v. *Gitter* (133 Misc. 693), where the defendant was charged with the distribution of obscene pamphlets; and in *People* v. *Werner* (139 Misc. 479), where the defendant was charged with the illegal practice of medicine; and in *People* v. *Dunne* (140 Misc. 379), where the defendant was charged with a violation of section 1897 of the Penal Law.

In the case of *People* v. *Hughes* (161 Misc. 405) the defendant Speiser was an attorney and the defendant Hughes his employee. In that case a certificate was denied largely upon the ground that a transfer would cause unavoidable delay and pervert justice by the disappearance of witnesses. The certificate was also denied in *People* v. *Wittekind* (161 Misc. 411), where the defendant was accused of soliciting business on behalf of an attorney. These latter cases grew out of the ambulance chasing investigation which brought about many causes of complaints against lawyers.

However, certificates were granted in the case of *People* v. *Morganstern* (134 Misc. 127), where the defendant was charged with presenting and participating in an obscene, indecent and immoral drama; also where the defendant was charged with intoxication (*People* v. *Manupella*, 139 Misc. 722); also where the defendants were charged with unlawfully conspiring to cheat and defraud an insurance company (*People* v. *Schumann*, 146 Misc. 395). In that case Schilling was a civil service employee who ran the risk of losing certain property rights, namely, his pension. In *People* v. *Willis* (59 Misc. 371) the certificate was granted where the defendant was a police officer charged with endangering the life

and health of a child. This decision was based upon the proposition that property rights in the pension fund were involved and that the trial of the case was of public interest.

A recent case is that of *People* v. *McGuinness* (168 Misc. 849), where a certificate was issued by reason of the fact that Murphy was a civil service employee, and McGuinness an attorney acting as an assistant district attorney. They were charged with conspiring to obstruct justice. In both these instances the defendants had property rights in a pension fund.

In the instant case the defendants, under the information filed in the Court of Special Sessions, are charged with " misdemeanors at or in connection with political caucuses, primary elections, enrollment in political parties, committees and conventions in violation of section 751 (subdivision 6) of the Penal Law."

Subdivision 6 of section 751 of the Penal Law, states: " A person who * * * 6. Induces or attempts to induce any officer, teller, canvasser, poll clerk, primary election inspector, election inspector, custodian of primary records, or clerk or employee of or in the office of a custodian of primary records at a political caucus, or primary election, or convention, or while discharging any duty or performing any act required or made necessary by the Election Law, to do any act in violation of his duty, or in violation of the Election Law; * * * Is guilty of a misdemeanor."

As stated heretofore, the defendants were watchers at a polling place on primary day, and are charged with inducing the inspectors of election to make a false return of the votes cast. It is alleged that these inspectors, when first apprehended, stated that they were forced to make a false return by reason of being intimidated by persons who threatened them with physical violence, but now contend that they were forced to make the false return by reason of certain acts and representations of the defendants. These inconsistent statements — if made — might present intricate and complicated questions of fact which should properly be left for determination to a trial jury.

As watchers the defendants had no authority whatsoever over the acts of the inspectors. The duties of watchers at a polling place are defined by sections 161 and 196 of the Election Law. The fact that the investigation that culminated in the prosecution of these defendants originated with the grand jury does not differentiate this prosecution from one which was commenced by the filing of a complaint in the Magistrates' Court. (*Matter of Dodge* v. *Supreme Court*, 276 N. Y. 444.)

The People charge the defendants with " inducing " the election officers to commit a violation of the Election Law. It, therefore,

becomes very essential to determine what sort of inducement would constitute a violation. The case of *People* v. *McKane* (143 N. Y. 455) is cited by the People as construing the meaning of the word " induce."

As heretofore stated, the defendants in the instant case were mere watchers at the polls representing rival candidates with conflicting interests. In *People* v. *McKane* (*supra*) McKane was convicted as an accomplice. He assisted the board of registry of the town of Gravesend in violating certain provisions of the Election Law by concealing the registry lists and neglecting and refusing to make the said lists accessible to the public for examination.

It was there stated (at p. 464): " The fact that he may, for some reason, be incapable of committing the same offense himself is not material so long as it can be traced to him as the moving cause by instigating others to do what he could not do himself." McKane was the supervisor of the town of Gravesend, a suburb of the city of Brooklyn, which had no other legal government than that of a rural town of the State. As supervisor he was the presiding officer and caused all election districts to converge in the town hall of which he had charge. He " dominated all the business and political interests in the town. * * * The defendant, being the chief of police and chairman of the town board, had the charge and control of the town hall, where the registry was made and the election held. * * * The time, manner and circumstances of these arrests of many persons, without cause, proved the ability of the defendant to wield absolute power, and indicated an utter disregard for personal rights and contempt for justice and law. * * * The fact that so many public officers were at the same time, in the same way and by the same means, either actively promoting or conniving at a scheme to produce a false result of the election, suggested the presence of some central figure and some controlling mind as the author; and all the circumstances pointed to the defendant as that person. He alone had the power, the means and the motive. * * * It would be quite tedious to enumerate all the various offices that he held with the important powers attached to them. It is within the limits of the evidence, and sufficient to say that there is scarcely any power of local government that can be exercised in a town, whether administrative or political, that was not concentrated in his person; and even the judicial power, as represented by the local magistrates, was subject to his influence. This sufficiently appears by the wholesale arrests of the watchers and other persons on and before the day of the election." He " controlled the politics of the town. * * * the vote was so nearly unanimous * * * as scarcely to conceal the fact that it represented in a great degree, at least, the will of a single man."

It would seem that the Court of Appeals in this case laid such emphasis upon the power exercised by the defendant to show that he was in a position to coerce the election officers, and to influence their conduct. In other words, it would seem that they construed the word " induce " to mean to influence the actions of others either by hope of reward or fear of reprisal.

The position occupied by these defendants in the polling place was entirely insignificant as compared with the power and influence wielded by the defendant over the election officers in *People* v. *McKane (supra)* so that it may be a serious question of law as to whether or not, even if they gave advice or made suggestions to the board of inspectors, their act in so doing would constitute a violation of subdivision 6 of section 751 of the Penal Law.

The defendant Juskowitz would undoubtedly lose his license as an auctioneer if convicted and thus be deprived of a means of livelihood.

A trial by jury, the bulwark of our constitutional government, could not in any way impair the rights of the People, and would not inconvenience or hamper the work of the Court of General Sessions in view of the fact that the condition of the calendar in this court is such that a defendant can be tried immediately upon the joinder of issue.

Under all the circumstances of the case, I believe that it is reasonable that the defendants be prosecuted by indictment pursuant to paragraph (c) of subdivision 1 of section 31 of the Inferior Criminal Courts Act.

Motions granted.