THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. CHARLES LUCIANO, THOMAS PENNOCHIO, DAVID
BETILLO, JAMES FREDERICO, ABRAHAM WAHRMAN and
RALPH LIGUORI, Appellants.

Argued January 18, 1938; decided April 12, 1938.

*Martin Conboy, David Asch, F. W. H. Adams* and *Moses Polakoff* for Charles Luciano, appellant. Statements by alleged co-conspirators were improperly submitted to the jury as evidence of the existence of the unlawful combination and of appellant's participation therein. (*Cuyler* v. *McCartney*, 40 N. Y. 221; *United States* v. *McKee*, 26 Fed. Cas. 1107; *Kuhn* v. *United States*, 26 Fed. Rep. [2d] 463; *United States* v. *Renda*, 56 Fed. Rep. [2d] 601; *Stager* v. *United States*, 233 Fed. Rep. 510; *Pope* v. *United States*, 289 Fed. Rep. 312; *Minner* v. *United States*, 57 Fed. Rep. [2d] 506; *People* v. *Kathan*, 136 App. Div. 303.) The right to be tried and sentenced for each offense separately, under the law of the State at the time of the commission of the crimes charged in the indictment, was a substantial right. (*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559; *People* v. *Faden*, 271 N. Y. 435; *McElroy* v. *United States*, 164 U. S. 76.)

*David P. Siegel* and *Samuel Hassen* for David Betillo and Abraham Wahrman, appellants. The indictment is insufficient on its face. In construing section 279 of the Code of Criminal Procedure as applicable to the appellants, and as allowing the joinder of many alleged distinct crimes, each based on a distinct transaction and each comprising a group of facts distinct and different

from the others, each containing the essential legal elements of a distinct crime with no allegation in the indictment of their connection through conspiracy, a common scheme or plan; and in compelling the appellants to stand trial under such indictment, the court denied to them due process and the fundamental form of criminal accusations with which the individual is endowed as a matter of right. (*Polinsky* v. *People*, 73 N. Y. 65; *Hawker* v. *People*, 75 N. Y. 487; *People* v. *Goldner*, 70 Misc. Rep. 199; *People* v. *Wilson*, 151 N. Y. 403; *People* v. *Callahan*, 29 Hun, 580; *People* v. *Adler*, 140 N. Y. 331; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559; *Taylor* v. *People*, 12 Hun, 212; *Dolan* v. *United States*, 133 Fed. Rep. 440; *Kelly* v. *United States*, 258 Fed. Rep. 392; *Pointer* v. *United States*, 151 U. S. 396.) The activities of the defendants, as disclosed by the record, were not made criminal by section 2460 of the Penal Law. (*People ex rel. Jackson* v. *Potter*, 47 N. Y. 375; *People* v. *Plath*, 100 N. Y. 591; *People* v. *Moore*, 142 App. Div. 402; *People* v. *Draper*, 169 App. Div. 479.) The evidence adduced by the People was insufficient as a matter of law to make out a case, to justify the submission of the case to the jury, to rebut the presumption of innocence and convict beyond a reasonable doubt. (*McGuire* v. *Bell Tel. Co.*, 167 N. Y. 208; *People* v. *Taleisnik*, 225 N. Y. 489; *People* v. *Downs*, 236 N. Y. 306; *People* v. *Shaw*, 158 App. Div. 146; *People* v. *Miller*, 70 App. Div. 592; *People* v. *O'Farrell*, 175 N. Y. 323; *People* v. *Elliott*, 106 N. Y. 288; *People* v. *Bissert*, 71 App. Div. 118; *People* v. *Weiss*, 129 App. Div. 671; *People* v. *Butler*, 140 App. Div. 705; *People* v. *Kudon*, 173 App. Div. 342; *People* v. *Josephs*, 143 App. Div. 534; *People* v. *Courtney*, 28 Hun, 592; *People* v. *Cohen*, 223 N. Y. 406; *People* v. *White*, 62 Hun, 114; *People* v. *Ledwon*, 153 N. Y. 10.) In construing section 279 of the Code of Criminal Procedure as applicable to the appellants, and as allowing the joinder of many alleged

distinct crimes occurring in date prior to the effective date of the section, particularly where the indictment on its face made no charge of conspiracy, a common scheme or plan, or the connection between various crimes, the appellants were deprived of a substantial right. (*Calder* v. *Bull*, 3 Dall. 269; *Kring* v. *Missouri*, 107 U. S. 221; *People* v. *Adler*, 140 N. Y. 331; *Duncan* v. *Missouri*, 152 U. S. 377; *Beazall* v. *State of Ohio*, 269 U. S. 167; *People ex rel. Luciano* v. *Murphy*, 160 Misc. Rep. 573.)

*Ceasar B. F. Barra* and *Ralph J. Barra* for Thomas Pennochio, appellant. The demurrer to the indictment should have been allowed and the indictment dismissed, upon the ground that more than one crime is charged in the indictment within the meaning of sections 278 and 279 of the Code of Criminal Procedure. (*Calder* v. *Bull*, 3 Dall. 386; *Thompson* v. *Utah*, 170 U. S. 343; *Thompson* v. *Missouri*, 171 U. S. 380; *Beazell* v. *Ohio*, 269 U. S. 167; *Kring* v. *Missouri*, 107 U. S. 221; *Duncan* v. *Missouri*, 152 U. S. 377; *Hartung* v. *New York*, 26 N. Y. 167; *People* v. *Cox*, 67 App. Div. 344; *McElroy* v. *United States*, 164 U. S. 76; *Summers* v. *United States*, 231 U. S. 92; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559; *People* v. *Cox*, 67 App. Div. 344; *Matter of Doyle*, 257 N. Y. 244.) The judgment and sentence was illegal and void, being based upon an invalid statute. (*People* v. *Faden*, 271 N. Y. 435; *People* v. *Ingber*, 248 N. Y. 302; *People ex rel. Thornwell* v. *Heacox*, 231 App. Div. 617; *People* v. *Edwards*, 173 App. Div. 375; *People* v. *Kerns*, 7 App. Div. 535; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 560; *People ex rel. Prince* v. *Brophy*, 273 N. Y. 90; *Matter of Farlow*, 272 Fed. Rep. 910; *Morgan* v. *Divine*, 237 U. S. 632; *Anderson* v. *Moyer*, 193 Fed. Rep. 499; *Moorehead* v. *United States*, 270 Fed. Rep. 210; *People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48; *People ex rel. Dixon* v. *Lewis*, 249 App. Div. 464; *People ex rel. Battista* v. *Christian*, 249 N. Y. 314; *People ex rel.*

*Kemmler* v. *Durston*, 7 N. Y. Cr. Rep. 350; 55 Hun, 64; 7 N. Y. Cr. Rep. 364; 119 N. Y. 569.) The trial court erred in charging the jury on the question of conspiracy. (*People* v. *Lazar*, 271 N. Y. 27; *People* v. *Smith*, 232 N. Y. 239; *People* v. *Montgomery*, 176 N. Y. 219; *People* v. *Sobieskoda*, 235 N. Y. 411.)

*Joseph Ralnick* and *Lorenzo C. Carlino* for Ralph Liguori, appellant. The case against Liguori was wholly circumstantial and was based upon testimony relating to varied and uncorroborated facts from which the jury was asked to draw an inference of guilt. (*People* v. *Woltering*, 275 N. Y. 51; *People* v. *Lewis*, 246 App. Div. 93; *People* v. *Razezicz*, 206 N. Y. 249; *People* v. *Suffern*, 267 N. Y. 115; *People* v. *Millard*, 247 App. Div. 253.)

*Samuel J. Siegel* for James Frederico, appellant. The acts alleged to have been committed by appellant in connection with the bonding of prostitutes do not constitute a violation of section 2460 of the Penal Law. (*People* v. *Fegelli*, 163 App. Div. 576.)

*Thomas E. Dewey, District Attorney* (*Stanley H. Fuld* of counsel), for respondent. Proof of a conspiracy was proper to establish the connection among the various defendants. (*People* v. *Crossman*, 241 N. Y. 138; *People* v. *Demasco*, 240 N. Y. 170; *People* v. *Swersky*, 216 N. Y. 471; *People* v. *Becker*, 215 N. Y. 126; *People* v. *Cassidy*, 213 N. Y. 388; *People* v. *McKane*, 143 N. Y. 455; *People* v. *Alexander*, 183 App. Div. 868; *Davis* v. *United States*, 12 Fed. Rep. [2d] 253; 271 U. S. 688; *State* v. *Meating*, 202 Wis. 47.) All who become parties to a common scheme and plan are criminally responsible. (*People* v. *Swersky*, 216 N. Y. 471; *People* v. *Crossman*, 241 N. Y. 138; *Matter of Disbarment Proceedings*, 321 Penn. St. 81.) All of the defendants, having aided and abetted, or having been otherwise concerned in their commission, were guilty of the crimes charged. (*People* v. *Draper*,

169 App. Div. 479; *People* v. *Fegelli*, 163 App. Div. 576; 214 N. Y. 670.) The testimony of non-accomplices was ample and tended to connect the defendants to the conspiracy. (*People* v. *Reddy*, 261 N. Y. 479; *People* v. *Dixon*, 231 N. Y. 111; *People* v. *Cohen*, 223 N. Y. 406.) The receipt of money for so-called bonding was a violation of subdivision 8 of section 2460 of the Penal Law. (*Ernst* v. *Crosby*, 140 N. Y. 364; *Holmead* v. *Maddox*, 12 Fed. Cas. 391; *Dougherty* v. *Seymour*, 16 Col. 289; *Ralston* v. *Brady*, 20 Ga. 449; *Ashbrook* v. *Dale*, 27 Mo. App. 649; *Matter of Davis*, 299 N. Y. Supp. 632; *Bowman* v. *Phillips*, 41 Kan. 364; *Matter of Disbarment Proceedings*, 321 Penn. St. 81; *People* v. *Fegelli*, 163 App. Div. 576; 214 N. Y. 670.) A trial of an indictment containing ninety counts, charging crimes of a similar nature connected together and part of a common scheme, is a reasonable application of the joinder statute. (*Cravens* v. *United States*, 62 Fed. Rep. [2d] 261; *Morse* v. *United States*, 174 Fed. Rep. 539; *Harris* v. *United States*, 8 Fed. Rep. [2d] 841; *Roselle* v. *Breshears*, 35 Fed. Rep. [2d] 934; *Chapman* v. *United States*, 10 Fed. Rep. [2d] 124; *State* v. *Brunn*, 145 Wash. 435; *State* v. *Meating*, 202 Wis. 47.) The legislation (Code Crim. Proc. § 279) dealing with the joinder of separate offenses is valid and constitutional and is not of an *ex post facto* nature. (*People ex rel. Pincus* v. *Adams*, 274 N. Y. 447; *Williams* v. *United States*, 168 U. S. 382; *Pointer* v. *United States*, 151 U. S. 396; *Cravens* v. *United States*, 62 Fed. Rep. [2d] 261; *Harris* v. *United States*, 8 Fed. Rep. [2d] 841; *People* v. *Northcott*, 209 Cal. 639; *People* v. *Kelly*, 203 Cal. 128; *State* v. *Fox*, 56 S. Dak. 294; *State* v. *Brunn*, 145 Wash. 435.) Subdivision 4 of section 2190 of the Penal Law is constitutional. (*People ex rel. Pincus* v. *Adams*, 274 N. Y. 447.)

CRANE, Ch. J. The indictment returned by the grand jury against appellants contained ninety counts, each charging a separate crime in violation of one of the sub-

divisions of section 2460 of the Penal Law relating to the compulsory prostitution of women. The crimes were joined as separate counts in the one indictment under the authority of section 279 of the Code of Criminal Procedure. Prior to the submission of the case to the jury, twenty-eight counts were withdrawn and the jury rendered a verdict of guilty on each of the sixty-two remaining counts.

In general the indictment charged three distinct types of the crime, each a violation of one of the subdivisions of Penal Law, section 2460. The defendants were charged with placing a female in a house of prostitution, in violation of subdivision 2; with receiving money for having placed her in a house of prostitution, in violation of subdivision 4; and with receiving money from the earnings of the woman so placed, without giving a consideration therefor, in violation of subdivision 8. The various counts of the indictment charge a crime under one of these subdivisions, specifying the names of the different women and the time, place and manner of the commission of the crime.

Without going into great detail, we may outline the scheme simply as follows: Appellants are all members of a combination to control commercialized vice in the city of New York. It attempted to gain a monopoly on prostitution and to exact tribute from those engaged in that unlawful calling. Prostitutes were obliged to operate through agents of the combination, or " combine," as it was called, and each week would be instructed by these agents or " bookers " as to the location of the house where she was to work during the ensuing week. For this service the booker collected a commission.

The keeper of the house received a portion of the girl's earnings and in addition was paid a further sum for board. Each booker paid to the appellants a certain sum from his earnings each week, or in some cases, turned over all his commissions and was paid a stated salary. In addition, every prostitute was obliged to pay weekly to the " combine " the sum of ten dollars for protection. In return

for this sum, the " combine " supplied her bail if she were arrested, and assisted her in her defense, or in otherwise escaping punishment for her crime. The operations of the conspirators were extended by force and violence so that all engaged in that vice would be brought under their control.

The appellant Luciano was the head of this enterprise; Pennochio was the treasurer; Betillo was in active charge; Frederico was sort of a manager; Wahrman was leader of the collectors and strong-arm man; Liguori was a strong-arm man.

As the principal and leader of the whole enterprise, Luciano did not take an active part in the daily operations of the business, but that he was the directing head and moving force behind it all, the evidence adduced on the trial leaves no doubt. A man by the name of Bendix sought an interview with Luciano in 1935 for the purpose of procuring a job. Luciano offered him a job as a collector for some of the houses of prostitution. Frederico was with Luciano at that time. Luciano told him: " If you are willing to work for $40 a week, it is O. K. with me. I will tell Little Davie to put you on." Betillo introduced Luciano to the witness, Mildred Balitzer, saying, " I want you to meet my boss." The same witness intended to marry a man who was involved in the vice combination and she asked Betillo to let him quit and make a new start. On his refusal to assent, she threatened to appeal to Luciano and was met by Betillo's reply that Luciano approved of everything he did. She saw Luciano, who told her that he would see Betillo about it, and later was told by him that he had spoken to Betillo but that nothing could be done until the man had paid up his indebtedness.

The witness Nancy Presser saw Luciano twice during 1933, or early 1934, with appellants Wahrman, Frederico and Pennochio, at which Luciano received reports and gave orders relative to forcing operators of houses to work with appellants. On one occasion, she witnessed a conversation

between Luciano and Betillo concerning the running of the prostitution and bonding business. Luciano stated to her that he would be better off if he himself handled the " thing " instead of trusting it to Betillo, and he spoke of his plan of taking over all houses of prostitution, raising prices, and placing the madams on a salary basis, with Betillo in charge of the business.

The witness Flo Brown saw Luciano, Pennochio, Betillo and Frederico in conference on numerous occasions. On one occasion they discussed the conduct of bookers and Luciano directed Frederico respecting the handling of bookers. On other occasions she was present at conversations between them in the course of which the prostitution racket was discussed, where Luciano gave instructions, and advice. At one time Luciano suggested that inasmuch as the vice investigation was pending, " it may get tough, and I think we ought to fold up for a while." Betillo argued against this stand, and Luciano discussed the syndication of all the houses and the placing of the operators on a salary or commission basis. Luciano said: " Well, all right, then let it go. I will let it go for a couple of more months, and if things are the same, you will have to let it drop."

One of the bookers, Harris, asked appellant Wahrman who was behind Betillo; and Wahrman answered: " Don't worry about it. * * * Charlie Lucky is behind him; he is behind Little Davie," i. e., Betillo. At one time trouble developed with a booker named Montana. Frederico told Luciano that Montana had been collecting money and failing to pass it in and Luciano replied, " Well, have them all come down and we will straighten the matter out."

· The appellant Luciano took the stand in his own behalf and testified that he did not know any of the defendants except Betillo. In this, he was contradicted not only by the women witnesses, but by employees of two different hotels.

This evidence cogently proves Luciano's connection with this nefarious enterprise. His position as head of this combination did not bring him in direct contact with the victims of this scheme, and he displayed an anxiety that his name be not too openly associated with the bonding enterprise. Thus the evidence against him is not so easily available as it was against some of those lower in the organization, but the evidence produced against him is amply sufficient to warrant the verdict of guilty against him. Much of this evidence, it will be observed, consists of acts and statements of Luciano himself. Other evidence is supplied by the acts and statements of co-conspirators in furtherance of the joint enterprise. While no conspiracy is charged in the indictment, there was ample proof of a conspiracy among appellants to organize prostitution on a basis most profitable for them. Their bookers placed the girls in the houses, collected a commission for so locating them, and their collectors levied upon each girl who operated in any of the houses. The acts and declarations of the conspirators in furtherance of the joint enterprise were admissible against all of those participating in the conspiracy.

" When a conspiracy is shown, or evidence on the subject given sufficient for the jury, then the acts and declarations of the conspirators, in furtherance of its purpose and object, are competent, and in a case like this it is not necessary, in order to make such proof competent, that the conspiracy should be charged in the indictment." (*People* v. *McKane*, 143 N. Y. 455, 470. See, also, *People* v. *Cassidy*, 213 N. Y. 388; *People* v. *Becker*, 215 N. Y. 126; *People* v. *Miles*, 192 N. Y. 541.)

It is not necessary " in order to make such proof competent that the conspiracy should be charged in the indictment." (*People* v. *Cassidy*, *supra*.)

*People* v. *McKane* is an outstanding case in this State. McKane was not charged with conspiracy. He was charged with a felony for violating the Election Law.

The members of the Board of Registry were induced by him willfully to violate the Election Law (Laws of 1892, ch. 680). McKane was not a member of the Board of Registry yet he was found guilty of the acts which only the members of the board could perform. He was guilty of procuring them to commit the crime, and the violations were numerous. The case against McKane was proved by the establishment of a conspiracy to commit the crimes. No single direct act was brought home to McKane. Everything against him was proof of the conspiracy and the acts and declarations made by the conspirators in the absence of McKane. *No charge of conspiracy was contained in the indictment.* A single case of compulsory prostitution would be established by proving a conspiracy to commit it if carried out, even without alleging the conspiracy in the indictment. If the conspiracy then proved is sufficient for one charge of compulsory prostitution, it is sufficient for two or more. In other words, the conspiracy proved, involving many effectuated similar crimes, may be sufficient to convict of each crime committed. The same evidence could be produced in separate trials; now we need but one trial. Only those crimes committed as the result of the conspiracy, however, are covered by this rule.

If five men meet in a room, and the leader directs that one shall commit a burglary on a bank on one night; that another commit a burglary on a jewelry store the next; and that the others commit a burglary in a fur shop on another night, can it be possible that the leader who directs and superintends all these burglaries can only be tried for a conspiracy, which is a misdemeanor? Of course not. He is guilty, although he never left that room, of all these three burglaries, and by proving this conspiracy, which need not be alleged in the indictment, he could be convicted of the crimes of burglary committed on these three different nights. Have we become so rigid and antiquated in our procedure that it would be necessary to call the same

evidence over again for three separate trials on three separate indictments? What is the objection under our present and modern procedure of putting in all the evidence of the conspiracy, and of the crimes committed in furtherance of it, in one trial, and convicting this high criminal of the three offenses, of which he was actually guilty? We must not be so backward as to make our legal procedure a hindrance instead of a furtherance to justice. Such is this case exactly. There is no need and no necessity and no reason for charging in the indictment that these three crimes, in the illustration I have given, were committed as the result of a conspiracy. Being included in one indictment, as they can be, they can be proved by a conspiracy the same as you prove a single crime by a conspiracy — without alleging the conspiracy in the indictment.

It is urged that the indictment is insufficient in that there is no charge of conspiracy and there is no allegation that the acts or transactions are connected together or that they constitute part of a common scheme or plan. In other words, the indictment charges a number of separate crimes but failed to charge a conspiracy embracing within it all the separate crimes joined in the indictment. The argument is made that while the indictment charged the appellants with placing women in houses of prostitution with accepting money for so placing them and with receiving part of their earnings without consideration, and, detailed names, time, place, in each particular count, the People attempted to sustain it on the trial by proof that Luciano was an overlord of crime and the "top man" in a gigantic criminal conspiracy. Such a variance was fatal, it is urged, and such practice under section 279 of the Code of Criminal Procedure is not to be condoned.

This argument is not, in my opinion, sound. There was no variance between the indictment and the proof offered to sustain it. To take one particular count, for example; Luciano was charged with placing Betty Anderson, on

April 22, 1935, in a named house of prostitution. There was no contention that Luciano personally knew the girl or that he personally sent her to that place. However, in order to convict him of the crime, it is not necessary that he perform the act himself. A principal is " a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime." (Penal Law, § 2.) It is not necessary to show that he knew that this particular girl was placed in the designated house on that date. It is enough to show that Luciano schemed with the others to " book " all the girls possible, in the houses over which they had or would be able to gain control, that he assumed the direction of the organization, lent his influence and force, and gave counsel, direction, advice; that his organization assumed control over the bookers and that he so aided and abetted in the commission of each particular crime. Where defendants were charged with poisoning horses, in violation of Penal Law, section 190, this court held that one of the witnesses was an accomplice because involved in the conspiracy. Said the court: " It is not necessary to show that he knew in advance of the event that the horses of this particular rival were to be poisoned. * * * It is enough, however, that he made himself a party to a conspiracy which embraced within its scope the destruction of the horses of competitors whenever in the judgment of the managers resort to such a measure became necessary." (*People* v. *Swersky*, 216 N. Y. 471, 477.) In like manner, Luciano planned with his lieutenants to place prostitution on a commercial basis and to extract whatever financial profit was possible. · The actual management he may have entrusted to others, but he cannot escape his criminal responsibility as the leader and principal.

Moreover, the indictment is not defective in form under the requirements of section 279 of the Code. Section 279 of the Code of Criminal Procedure provides: " When there are several charges   *   *   *   for two or more acts or transactions connected together or constituting parts of a common scheme or plan, or for two or more acts or transactions constituting crimes of the same or a similar character, instead of having several indictments or informations, the whole may be joined in one indictment or information in separate counts,   *   *   *  ; provided, however, that where the charges involve two or more acts or transactions constituting crimes of the same or a similar character which are neither connected together nor parts of a common scheme or plan, the court, in the interest of justice and for good cause shown, may, in its discretion, order that the different charges set forth in the indictment or information or indictments or informations, be tried separately." .

Here the crimes charged against all of the appellants · were beyond all doubt parts of a common scheme or plan. In addition, however, they were all crimes of a similar character, and the substantial similarity was apparent upon a mere reading of the indictment. The similarity between the crimes was so striking that the inference that they were connected together or parts of a common scheme is well nigh inescapable. Where it does not appear in the indictment that the charges involving acts of a similar nature are connected together or are parts of a common scheme or plan, the court has discretion to order them tried separately. Nevertheless, it is proper to join them in one indictment, and to try them together unless the court orders otherwise. There was here no need to allege a conspiracy since the crimes were properly joined together because of their similarity. .

As to the sentences; for certain crimes a man loses his life; for others he may be imprisoned for life; he certainly cannot stay in jail beyond his life. There is nothing,

therefore, unusual in a punishment which may last as long as a man lives. A man may commit a separate crime on each of three distinct days for each of which he is tried separately and sentenced after each trial, the terms of imprisonment to run consecutively. These three sentences could very easily under our law amount to one hundred and fifty years, if the crimes were of a serious nature. A person, however, could not serve longer than his life. What is illegal about this? I confess I can see nothing in the criticism of the sentence in this case.

The fact is that the defendants in this case received shorter sentences than the law allowed and permitted the judge to impose for the crimes of which they have been found guilty. In other words, they got less than they might have gotten.

In form the sentence may be objectionable in that the statute (Penal Law, § 2190, subd. 4) contemplates a separate sentence for each distinct offense, but since it would be unreasonable to suppose that the punishment would have been less under such construction of the statute we hold that no substantial right of the defendants has been affected. (*Stephens* v. *State*, 53 N. J. L. 245.)

The judgments should be affirmed.

LEHMAN, O'BRIEN, LOUGHRAN and FINCH, JJ. concur; RIPPEY, J., dissents on the ground there were material and prejudicial errors committed during the trial which cannot be overlooked, and that the defendants were tried for a crime with which they were not charged in the indictment. HUBBS, J., taking no part.

Judgments affirmed.