THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MORRIS FRIEDLANDER, LOUIS YUKELSON, IRVING GLASSER, LOUIS GLASSER, JAMES ABISROR, SAMUEL JENKS, WILLIAM SWIRNOW, SAMUEL ZIFF, SAMUEL SWIRNOW and ISIDORE MARKOWITZ, Appellants.

Argued April 12, 1939; decided May 31, 1939.

*William W. Kleinman* and *Sol A. Klein* for Morris
Friedlander and Samuel Jenks, appellants. The evidence
was insufficient as a matter of law to substantiate the
charge that the defendants Friedlander and Jenks conspired
with anybody to pay less than the prevailing rate of wages
as required by section 220 of the Labor Law (Cons. Laws,
ch. 31) or that they ever paid less than the prevailing rate
of wage. (*McCaffrey* v. *State*, 259 N. Y. 159; *Dunphy* v.
*State*, 264 N. Y. 488; *Ziegler* v. *City of New York*, 253 App.
Div. 764; 277 N. Y. 740; *Building Chemicals Corp.* v. *State*,
164 Misc. Rep. 407; *People* v. *Shakun*, 251 N. Y. 107;
*Del Vecchio* v. *Bowers*, 296 U. S. 280; *Wiget* v. *Becker*, 84
Fed. Rep. [2d] 706; *Chaika* v. *Vandenberg*, 252 N. Y. 101;
*Wood* v. *City of New York*, 274 N. Y. 155; *N. Y. Clothing
Mfrs. Ex., Inc.*, v. *Textile Finishers Ass'n., Inc.*, 238 App.
Div. 444.)

*Stephen Callaghan, Ralph Stout* and *Barnett J. Nova* for
Louis Yukelson, appellant. There was no evidence to
establish a conspiracy. (*People* v. *Flack*, 125 N. Y. 324;
*People* v. *Powell*, 63 N. Y. 88; *People* v. *Suffolk Contracting
Co.*, 171 App. Div. 645; *Cuyler* v. *McCartney*, 40 N. Y. 221;
*Place* v. *Minster*, 65 N. Y. 89; *People* v. *Miles*, 123 App.
Div. 862; 192 N. Y. 541; *Douglas* v. *McDermott*, 21 App.
Div. 8; *Wall* v. *Beedy*, 161 Mo. 625; *People* v. *Lewis*, 264
Mich. 83; *People* v. *O'Farrell*, 175 N. Y. 323; *People* v.
*Ryan*, 263 N. Y. 298; *People.* v. *Razezicz*, 206 N. Y. 249.)

*David F. Price* and *Sol A. Klein* for Louis Glasser and
Irving Glasser, appellants. There was a total failure of
proof to substantiate the charge that the defendants Glasser
conspired with anybody to pay less than the prevailing
rate of wages as required by section 220 of the Labor Law
or that they ever paid less than the prevailing rate of wages.
(*N. Y. Clothing Mfrs. Ex., Inc.*, v. *Textile Finishers Assn.,
Inc.*, 238 App. Div. 444; *Ziegler* v. *City of New York*, 253
App. Div. 764; *McCaffrey* v. *State*, 259 N. Y. 159; *Wood* v.
*City of New York*, 274 N. Y. 155; *Building Chemicals Corp.*
v. *State*, 164 Misc. Rep. 407; *People* v. *Harrison*, 238 N. Y.

348; *People* v. *Silverman*, 252 App. Div. 149; *Del Vecchio* v. *Bowers*, 296 U. S. 280; *Wiget* v. *Becker*, 84 Fed. Rep. [2d] 706; *Chaika* v. *Vandenberg*, 252 N. Y. 101; *People* v. *Skahun*, 251 N. Y. 107; *Connally* v. *General Construction Co.*, 269 U. S. 385.) It was reversible error to admit in evidence the hearsay declarations of defendants Unger, Friedlander, Jenks and Yukelson as against the defendants Glasser. (*People* v. *Silverman*, 252 App. Div. 149; *People* v. *Ryan*, 263 N. Y. 298; *Lillibridge, Inc.*, v. *Johnson Bronze Co.*, 247 N. Y. 548; *People* v. *Miles*, 123 App. Div. 862; 192 N. Y. 541; *Cuyler* v. *McCartney*, 40 N. Y. 221; *Place* v. *Minster*, 65 N. Y. 89; *Garnsey* v. *Rhodes*, 138 N. Y. 461.).

*Robert Daru* and *Daniel S. Levy* for James Abisror, appellant. There was no evidence whatever to support the conviction of defendant Abisror. (*People* v. *Katz*, 209 N. Y. 311; *People* v. *Flack*, 125 N. Y. 324; *People* v. *Wiman*, 148 N. Y. 29; *People* v. *Powell*, 63 N. Y. 88; *People* v. *Yannicola*, 133 App. Div. 885.) There was no evidence to justify defendant's conviction even if it is assumed, without benefit of proof, that he belonged to the contractors' association. (*People* v. *Swersky*, 216 N. Y. 471; *People* v. *Katz*, 209 N. Y. 311; *People* v. *Yannicola*, 133 App. Div. 885; *People* v. *Lewis*, 275 N. Y. 33; *People* v. *Fitzgerald*,. 156 N. Y. 253; *People* v. *Bennett*, 49 N. Y. 157; *People* v. *Sowma*, 252 App. Div. 413; *People* v. *Kelly*, 11 App. Div. 495; *People* v. *Woltering*, 275 N. Y. 51; *People* v. *Suffern*, 267 N. Y. 115; *People* v. *Razezicz*, 206 N. Y. 249; *People* v. *Governale*, 193 N. Y. 581; *People* v. *Molineux*, 168 N. Y. 264.)

*Stephen Callaghan, Ralph Stout* and *Barnett J. Nova* for William Swirnow, appellant. There was no evidence to establish a conspiracy. (*People* v. *Flack*, 125 N. Y. 324; *People* v. *Powell*, 63 N. Y. 88; *People* v. *Suffolk Contracting Co.*, 171 App. Div. 645; *Cuyler* v. *McCartney*, 40 N. Y. 221; *Place* v. *Minster*, 65 N. Y. 89; *People* v. *Miles*, 123 App. Div. 862; 192 N. Y. 541; *Douglas* v. *McDermott*, 21 App. Div. 8; *People* v. *Doyle*, 107 Misc. Rep. 268; *Wall* v. *Beedy*,

161 Mo. 625; *People* v. *Lewis*, 264 Mich. 83; *People* v. *O'Farrell*, 175 N., Y. 323; *People* v. *Ryan*, 263 N. Y. 298; *People* v. *Razezicz*, 206 N. Y. 249.)

*Stephen Callaghan, Ralph Stout* and *Barnett J. Nova* for Samuel Swirnow, appellant.

*Maurice Edelbaum* for Samuel Ziff, appellant. The People failed to sustain the burden of proof and the information should have been dismissed. (*People* v. *Patrick*, 182 N. Y. 131; *People* v. *Dixon*, 231 N. Y. 111; *People* v. *Reddy*, 261 N. Y. 479; *People* v. *Silverman*, 252 App. Div. 149; *People* v. *Pavlik*, 50 Hun, 604; *People* v. *Smith*, 84 Misc. Rep. 348; *People* v. *Moyer*, 186 App. Div. 278; *People* v. *Ledwon*, 153 N. Y. 10.)

*Maurice Edelbaum* for Isidore Markowitz, appellant. The contention that Markowitz was a participant in the conspiracy is not sustained by the evidence. (*People* v. *Ledwon*, 153 N. Y. 10; *Matter of Case*, 214 N. Y. 199.)

*John J. Bennett, Jr., Attorney-General* (*John C. Crary* and *Benjamin Heffner* of counsel), for respondent. The proof was sufficient as a matter of law to establish the prevailing rate of wages required to be paid by the defendants-appellants and to establish their failure to pay it in every instance alleged in the counts of the information charging violation of the Labor Law and likewise in every instance charged as an overt act in the conspiracy count and in the case of other similar overt acts not specifically charged. (*People ex rel. Rolf* v. *Coler*, 58 App. Div. 347; *Connally* v. *General Construction Co.*, 269 U. S. 385; *Matter of Gaston* v. *Taylor*, 274 N. Y. 359; *Corti* v. *Wexler*, 159 Misc. Rep. 116; *People* v. *Fisher*, 223 N. Y. 459; *Verona Central Cheese Co.* v. *Murtaugh*, 50 N. Y. 314; *People ex rel. Price* v. *Sheffield Farms Co.*, 225 N. Y. 25; *People* v. *Luciano*, 277 N. Y. 348.) The evidence adduced was sufficient and competent to establish conspiracy as charged in count two, of the information. (*People* v. *Connolly*, 253 N. Y. 330; *People* v. *Miles*, 123 App. Div. 862; 192 N. Y. 541; *People*

v. *Luciano*, 277 N. Y. 348; *Kelley* v. *People*, 55 N. Y. 575; *People* v. *Swersky*, 216 N. Y. 471; *People* v. *Wightman*, 104 N. Y. 598; *People* v. *Thompson*, 97 N. Y. 313; *People* v. *Ogle*, 104 N. Y. 511.)

CRANE, Ch. J. Section 220 of the Labor Law (Cons. Laws, ch. 31) provides that eight hours shall constitute a legal day's work for all classes of employees in this State except those engaged in farm and domestic service. Each contract to which the State or municipal corporation is a party shall contain a stipulation that no laborer shall be permitted or required to work more than eight hours in any calendar day. Subdivision 3 of this section provides the wages:

" 3. The wages to be paid for a legal day's work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages as hereinafter defined. * * *.

" It shall be the duty of the fiscal officer, as defined in this section, to ascertain and determine the schedule of wages to be paid workmen, laborers and mechanics on each such public work, prior to the time of the advertisement for bids, and such schedule of wages shall be annexed to and form a part of the specifications for the work. * * *.

" Any person or corporation that wilfully pays after entering into such contract, less than such stipulated wage scale as established by the fiscal officer shall be guilty of a misdemeanor and upon conviction shall be punished for such first offense by a fine of five hundred dollars or by imprisonment for not more than thirty days, or both fine and imprisonment; * * *."

A *conspiracy* is a crime defined in article 54 of the Penal Law, section 580: If two or more persons conspire to commit a crime or to commit any act injurious to the public health or for the perversion or obstruction of justice, or the due administration of the laws, each of them is guilty of a misdemeanor, punishable as ordinary misdemeanors. These two crimes are separate and distinct, and the punishment

is different. A person who fails to pay the prevailing rate of wages may be punished by a fine of not more than five hundred dollars, or an imprisonment for not more than thirty days. A person who is guilty of a conspiracy may be punished by imprisonment in a penitentiary or county jail for not more than one year, or by a fine of not more than five hundred dollars, or both (Penal Law, § 1937).

These defendants were tried and convicted of a conspiracy to violate section 220 of the Labor Law, that is, of a conspiracy to pay less than the prevailing rate of wages, and they have been sentenced to imprisonment in excess of the time provided for the violation of the Labor Law. This appeal brings up for review, therefore, not the question whether any of these parties failed to pay the prevailing rate of wages, or violated the Labor Law, but whether they conspired or agreed together to accomplish this purpose. In this connection we must also read section 583 of the Penal Law: " No agreement except to commit a felony upon the person of another, or to commit arson or burglary, amounts to a conspiracy, unless some act beside such agreement be done to effect the object thereof, by one or more of the parties to such agreement."

These defendants had contracts, or employed labor to work on contracts, for " painting and alteration repair work " on public schools in the borough of Brooklyn, city of New York. That some of them paid less than the rate fixed by the Comptroller, or the " prevailing rate," as it is called, appears from the evidence; that they conspired to do so, or entered into a conspiracy to violate the Labor Law, as charged in the information, is lacking of proof. We, therefore, turn to the record to analyze the evidence as to each which may bear in the slightest way upon an agreement, a federation or combining together to violate this law.

The Brooklyn and Queens Contractors Association was an organization of contractors who are specialists in doing painting on public works, including public schools. Their organization was no different than a labor organization, and

its formation was perfectly legal. There was nothing in and about the association in itself which was illegal. Most of these defendants are members of this organization. This seems to be the principal link in the conspiracy, but of course by itself forms no conspiracy. Unless the members of this organization did something more than join the association, they are not guilty of the crime charged.

### Evidence of Conspiracy as against Friedlander.

Most all of the appellants are members of the contractors' association; they were all engaged in the same business as contractors, in what respondents claim to be a specialized type of work — doing painting for public works. The fact that appellants belong to this association cannot alone convict them of the conspiracy charged, when there is an absence of proof that the organization was formed, or was operated for the criminal purpose of subverting the provisions of the Labor Law. The proof in this case contradicts the hypothesis that the organization was conducted for any such purpose. It is noteworthy that, while many contractors belonging to the association were joined in the indictment, at least one of them was discharged by the courts below as having no part in the alleged conspiracy.

The meetings of the association were open to persons other than members; they were attended by subcontractors who were desirous of making contacts with the members of the association; and at no time was there any discussion about agreeing to pay the prevailing rate of wage. The secretary of the association, Lawrence Berson, was called by the People to testify as to the membership of the association, but he was not asked to tell what took place at the meetings. The proof indicates that Friedlander had at one time represented the organization in conferring with the National Recovery Act authority to secure a better relationship between employers and employees in the painting trade. The evidence introduced by the People indicates that these contractors were rivals, and that the bidding for the contracts was competitive. There is nothing to indicate that these

contractors had determined upon preconcerted action to control the bidding and the price paid for labor in the fulfillment of the contracts. In fact, quite the contrary is evident, not only in the bidding but also in the payments made to the laborers by the different contractors. The proof indicates that the amount paid the employees varied considerably, ranging from five to seven or even nine dollars per day, not only as between employees of different contractors, but also as between the employees of the same contractor.

The most effective testimony concerning the criminal nature of the contractors' association was that of Samuel Freeman, the secretary and treasurer of the District Council of the Painters' Labor Union. He testified that in May, 1936, he had a conversation with Adolph Unger, an alleged conspirator whose conviction was reversed by the court below. Over objection and exception, Freeman, who was not a defendant, said that Unger had told him that he could not compete on school work and pay union wages, because the contractors had an association, of which he was also a member, and that this association conducted its business on a " racket basis," and " he told me that this association meets every week, decides, discusses policies about their work and every member of the association is to pay four per cent of the net price of the contract as protection against the union. Mr. Unger told me that due to this protection it is impossible for him, as one who wants to be a legitimate employer and employ union labor, to take any work. He told me that he thinks that it is about time that the union, and I as the secretary of the union, should do something about it, so as to break up this racket and create a condition whereby the legitimate employers should be able to do work and employ union labor and pay them the prevailing rate of wages, the union rate of wages."

This hearsay evidence, directly contradicted by Hyman Tamaroff, who was a member of the union, and present when the conversation took place between Unger and Freeman, was inadmissible. These gratuitous remarks of

Unger were made, if made at all, as comments on the conspiracy, and not at all in furtherance thereof. Besides, he has been found to be no conspirator himself. His statements could not then be binding on Unger's alleged co-conspirators, and they are not material as admissions by Unger here, as the information against him was dismissed by the Appellate Division. This and other hearsay testimony given by Freeman was the strongest evidence on the record concerning the criminal purposes of the association. When combined with the other testimony concerning the connection of the association with the Buggsey Goldstein gang, which the Appellate Division has held insufficient to establish a conspiracy to break up attempts to unionize the employees of the contractors or to prevent picketing of the work, it is difficult to ascertain what testimony was relied on in reaching the conclusion that the contractors' association was guilty of the criminal conspiracy to breach the provisions of section 220 of the Labor Law. The guilt of the defendants was inferred in a large measure from their membership in the association. As stated before, the association was a legal organization, and membership in it no evidence in itself of a conspiracy.

The alleged admissions made by the appellant Friedlander were testified to by Nathan Bresinger, a council delegate of the Painters Union. He stated that his purpose was to organize the job (which Friedlander was doing on a public school on Fort Hamilton Parkway, between Forty-third and Forty-fourth streets), and he was there to see that the " men get the prevailing rate of wages which the City rate provides for." When Friedlander said he could do nothing about it, Bresinger accused him of not wanting to sign up and pay the wages, and said, " You would rather take the man's wages off and give to some gang," Friedlander replied, " I can't help it, I am not myself in it." When Bresinger returned the next day to say he would place pickets if Friedlander did not make a decision, he testified that Friedlander said, " I gave you my answer yesterday. You know, yourself, that I, myself, cannot do

anything because we are all in the same water." Respondent would have us infer from this that Friedlander was acting in concert with the other members of the association, but there is no explanation as to whom the word " we " referred, and the inference is equally possible that Friedlander was compelled to act as he did because his competitors were doing likewise. The whole testimony shows that the references were to union labor, not wages of those non-union men who were employed. This may be an admission of Friedlander's knowledge of his violation of section 220 of the Labor Law, but it is not evidence upon which to base a charge of *conspiracy* between Friedlander and other defendants to violate the provisions of this section. " Buggsey " Goldstein is dragged in as, following the above statement of Friedlander, Bresinger said he asked Friedlander, " Is it because of Buggsey Goldstein? " and Friedlander said, " Yes, if you want to know." The union pickets, Cappadora and Vellensky, testified that they had accompanied Bresinger, but nothing was said about any association of Buggsey Goldstein. " Buggsey " Goldstein was a strike breaker or something of the kind whose gang the defendants were accused of employing to protect them from strikers. Buggsey Goldstein and his associates were acquitted, also the defendants, of this charge.

EVIDENCE OF CONSPIRACY AS AGAINST APPELLANT JENKS.

It is the same as against this appellant as it is against Friedlander, with the exception of the last paragraph above, relating to the alleged admissions by Friedlander. The testimony as to alleged admissions made by Jenks, from which respondent seeks to infer Jenks' participation in a conspiracy to violate section 220 of the Labor Law, was given by Martin Barth, a painter who was employed by Jenks at School No. 205. This witness said he asked Jenks for more money and Jenks replied that he couldn't possibly pay any more, that business and competition were keen, and also he had to pay " protection money." This is not

a statement that he participated with others in securing this "protection" or that the "protection" was against paying his men the wages fixed in the public works contracts. In fact the statements as a whole tend to bolster appellants' point that it was the competition of other contractors breaching the Labor Law which required Jenks to pay less than the rate fixed by the Comptroller, rather than his collusion with them.

### EVIDENCE OF CONSPIRACY AS AGAINST APPELLANT LOUIS GLASSER.

On the general proof of conspiracy, the evidence is the same as that against Friedlander, already related, except that it should be noted that the hearsay testimony of Freeman as to what Unger had told him was particularly prejudicial as against this appellant. Freeman said that Unger told him that Louis Glasser was the go-between between the contractors' association and the "protective" association. As already pointed out, this testimony was not in furtherance of the conspiracy, but was entirely disconnected from any of the actions of the alleged conspirators and pure hearsay.

The alleged admissions made by this appellant were testified to by Nathan Shelensky, a painter and business agent of Local 971 of the Painters Union. He approached Louis Glasser when the latter was on a public works job for which Louis' brother, Irving Glasser, had the contract. The witness testified, however, that Louis said he was the boss, and told Shelensky he did not want to work with the union. Shelensky said he would be compelled to place pickets on the school, and Louis Glasser told him he would not because "we have somebody to take care of these schools. * * * We have protection. We are protected by the Buggsey Goldstein gang." After a court recess, Shelensky was recalled to the stand and testified that Louis Glasser had told him that he belonged to a "Brooklyn & Kings Association" and that "we have protection, we are protected by the Buggsey Goldstein gang." Here

Shelensky has said the object of his approaching Louis Glasser was to unionize the workmen on the job, and Glasser said he didn't want the job unionized. There is nothing to indicate that anything was said about the workers being paid less than the prevailing rate of wage nor that the protection was extended to prevent this. At any rate, the improper and incompetent testimony, described above in the paragraphs on Friedlander and Jenks, particularly that of Freeman with reference to what Unger had told him of Louis Glasser, warrants a reversal as to this appellant.

### The Testimony as to the Alleged Conspiracy as against Appellant Irving Glasser.

He too was a member of the contractors' association, and the same may be said with reference to the testimony against him in this regard as has already been said concerning the other appellants. There is no evidence, such as the alleged admissions made by the other appellants described above, that he took active part in the alleged conspiracy, except as may be inferred from the fact that he held the contract for the job which Louis Glasser was bossing when he made the statements to Nathan Shelensky. There is nothing to indicate that Irving Glasser was around when Louis made these statements, nor was there any evidence that Irving Glasser made any such statements.

### The Evidence of Conspiracy as against Appellant Louis Yukelson.

Aside from the fact that Yukelson was a member of the contractors' association, the only material testimony linking him with the alleged conspiracy between the contractors to pay less than the prevailing wage is the testimony of Sickels, the business agent of Local 645 of the Painters Union. He stated that Yukelson asked him why unions didn't do something about painting on schools; that "if you are not in on the inside you can't get any jobs." He stated that certain bosses had formed an association, though he would mention no names. At a later time,

Yukelson told him that he had been doing a job in Queens but was forced to stop, and that he then joined the association and was able to finish the job. Sickels said that the general line of his conversation with Yukelson was that the latter wanted to secure harmony between the unions and the contractors. At most these alleged admissions could only affect Yukelson himself, and were certainly not in furtherance of the conspiracy, but were gratuitously made, entirely apart from the conspiracy and in derogation thereof. As the respondent admits, the "statements may indicate Yukelson's regret" concerning the alleged conspiracy. However, for the reasons already set forth in the analysis of the case against Friedlander, the conviction of this defendant of the charge of conspiring with the other contractors to violate section 220 of the Labor Law, should be reversed.

EVIDENCE OF CONSPIRACY AS AGAINST SAMUEL SWIRNOW.

The only possible connection this appellant could have with the conspiracy was the testimony given by Gustav Peterson and Arthur Rosenroth. The former testified that while working on a job of this appellant's father, William Swirnow, this appellant acted as foreman of this job; that Sam was the one who put him to work, and that he received his pay from Sam, although he admitted that he signed receipts for his pay which read, "Received from William Swirnow." Rosenroth said that, when he came to the job where Sam was working, Sam put him to work, although William Swirnow paid him his wages.

Berson, the secretary of the contractors' association, testified, on cross-examination, that Samuel Swirnow was not a member of the association; and there is nothing in the record which could possibly connect this appellant with any alleged conspiracy. Moreover, I do not believe that this appellant can be charged with a direct violation of section 220 of the Labor Law. Samuel apparently never had a contract to execute the painting work on any public school with which we are concerned in this case; he was

not a member of the contractors' association. The only testimony there is here with regard to this defendant is, that he acted as foreman on a job for which his father, William Swirnow, had the contract, and on which his father paid two workmen five dollars per day. The judgment of conviction against this defendant must be reversed.

CHARGE OF CONSPIRACY AS AGAINST WILLIAM SWIRNOW.

This defendant was a member of the contractors' association. Aside from this fact there is nothing to link him with any alleged conspiracy except for the fact that he paid his painters on public school jobs, for which he held contracts, less than the prevailing rate of wage.

CHARGE OF CONSPIRACY AS AGAINST JAMES ABISROR.

There is no direct testimony, either by Berson, the secretary of the contractors' association, or the hearsay testimony of Freeman, to indicate that this appellant was even a member of the association The only connection from which an inference is drawn, that he was a member of the association, was the fact that he made a check in the amount of ten dollars, payable to the association. (See People's Exhibit No. 29.) Respondent claims that this was the initiation fee which the appellant paid for his admission to the organization. Yet respondent emphasizes, with reference to other appellants, that they paid an initiation fee of twenty-five dollars for membership in the organization. Under the circumstances, Abisror's membership, on the basis of this evidence alone, is subject to grave doubt. There is nothing else in the record to prove conspiracy although the violation of the Labor Law by paying lower wages may have been proved.

As to the defendants Ziff and Markowitz, there is no evidence against them of any conspiracy.

If the conclusions to be drawn from the evidence were those stated by my brother FINCH, we would agree with him in his result for reasons stated. The lack of evidence does not justify the conclusion. None of these defendants

admitted that they were banded together for the purpose of paying less than the prevailing rate. The Brooklyn and Queens Association was for no such purpose and there is no evidence that it was. These defendants can be punished for paying less than the prevailing rate if such be the case, but the offense cannot be swollen into a conspiracy in order to increase the punishment when evidence of an illegal combination or association, followed by overt acts, is lacking.

For the reasons here stated, the judgment convicting these defendants of *conspiracy* to violate section 220 of the Labor Law should be reversed, and the information dismissed, as to this charge.

As stated at the beginning, we are not touching upon the charge of the violation of the Labor Law, which is, as we understand it, still open as against these defendants, or such of them as have paid, or been charged with paying, less than the prevailing rate.

The judgment of the Appellate Division, so far as appealed from, should be reversed and the judgment of the Court of Special Sessions convicting the defendants on conspiracy charges should be reversed and the conspiracy charges of the information dismissed.

FINCH, J. (dissenting in part). The unanimous affirmance by the Appellate Division as to these remaining defendants should be affirmed, except as to defendants Ziff and Markowitz. It is impossible upon this record to say that there is no evidence sustaining the finding of the three-judge court of Special Sessions unanimously affirmed by the Appellate Division in so far as the appeal is here taken. The evidence in this record is ample to sustain the finding of Special Sessions; but even if the evidence were meager and thin, this court could not review the facts on the weight of the evidence. " In other words, although the evidence is decidedly meager and thin, we cannot say that there was no evidence to sustain the conclusions of guilt as found by the triers of fact, the judges of Special Sessions. This court cannot review the facts or the weight of evidence."

(*People* v. *McCarthy*, 250 N. Y. 358, 364.) As confirming this view of the evidence in this record, when the Appellate Division reversed and discharged *Goldstein* and *Magoon* and six other defendants, the decision was not placed upon the ground that there was no evidence, but upon the ground that the finding was against the weight of the evidence.

In brief, the evidence against these defendants divides itself into three classes. First, sixteen witnesses testified against these remaining defendants, except Ziff and Markowitz, that they paid less than the prevailing rate of wages, and against this testimony there was no testimony by way of denial or explanation offered on the part of defendants. We thus have in a small neighborhood a number of men who are known to each other, closely associated together, and doing the same kind of work, and committing the same violations in time, place and circumstance. This constitutes some evidence to be submitted to the jury bearing on this charge of conspiracy. (*People* v. *Luciano*, 277 N. Y. 348, 359; 1 Wigmore on Evidence [2d ed.], § 304; cf. *People* v. *Van Tassel*, 156 N. Y. 561, 564; *Commonwealth* v. *Smith*, 163 Mass. 411, 418.)

We next have evidence showing that these defendants were associated together in the Brooklyn and Queens Contractors Association. The importance of this testimony is not that the association was illegal and, hence, membership constituted participation in the conspiracy, but that those who were banded together in the organization were in close communication with one another. The commission of like offenses under similar circumstances by persons in close communication with one another, surely is some evidence of a common design or conspiracy. (Wigmore on Evidence, *supra.*)

As to one of the defendants, Abisror, there is no evidence that he was a member of this association, but there is evidence from which an inference might be drawn that he was seeking membership therein.

The third class of evidence is that of admissions by these defendants that they were associated together for the

purpose of obtaining for themselves these repair contracts without paying the prevailing rate of wages. In brief, these admissions were made in answer to the peaceful supplications of the union that the defendants carry out their contracts and obey the law by paying the prevailing rate of wages. In answer to which the statements were, in brief, that the defendants were banded together for the purpose of paying less than the prevailing rate, and paying a percentage of the total amount of the contracts for being protected by gangsters.

The Appellate Division has reversed and discharged the alleged gangsters who were found guilty by Special Sessions as against the weight of the evidence; and, therefore, these admissions only bear on the question of the guilt of these defendants in so far as they are alleged to have conspired to obtain these contracts by means of paying less than the prevailing rate of wages.

No defense is possible to these defendants by way of lack of knowledge of the prevailing rate of wages, as this was fixed by the Comptroller before the bids were had on these contracts, and the contracts expressly provided the scale of wages to be paid to the different kinds of mechanics and helpers. As pointed out by the Appellate Division, there was no possibility of discriminating between the wages paid to painters, decorators and to their helpers, for the reason that in this contract the Comptroller fixed only one rate for this work, as contrasted with a subdivision of other work between master mechanics and apprentices.

It follows that the judgments appealed from, except as to defendants Ziff and Markowitz, should be affirmed.

LEHMAN, HUBBS and LOUGHRAN, JJ., concur with CRANE, Ch. J.; FINCH, J., dissents in part in opinion in which RIPPEY, J., concurs; O'BRIEN, J., taking no part.

Judgment accordingly.