■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. LEONARD ROSENFELD, PHILIP J. BUCKLES and JAMES KELLY, Appellants.

*Per Curiam.* These are appeals by each of the three defendants from a judgment of the Court of General Sessions convicting each of them, after trial by court and jury, of an attempt to commit the crime of extortion (Penal Law, §§ 2, 850, 851).

The indictment on which the appellants were tried was in three counts, the first count charging them and the defendant Mallon of conspiracy to commit the crime of extortion, the second count charging said defendants of attempting to extort money from one Shimon Tamari by accusing him of a crime and to cause his arrest and prosecution therefor, and the third count charging said defendants with an attempt to extort money from Shimon Tamari by threatening to accuse his wife, Joan Tamari, of a crime. The jury acquitted the defendant Mallon on all counts and acquitted the appellants on the first and third counts of the indictment.

The convictions of the appellants of the second count charging them with attempting to extort money from Shimon Tamari are well supported by the evidence. In fact, appellants Buckles and Kelly raise no question on this appeal as to the legal sufficiency of the evidence. As to appellant Rosenfeld, who questions the sufficiency, the evidence of his guilt is clear and convincing; and, in our opinion, the case against him is even stronger than that against his codefendants.

We find no merit in many of the claims of prejudicial error or alleged instances of trial misconduct urged by the appellants as a basis for a reversal and new trial. For instance, we conclude that it was proper for the trial court to receive as against all defendants the testimony with respect to the events and the conversations in the Nichols and Kraft apartments on June 3, including the testimony with respect to the payment of the $300 by Nichols to Rosenfeld. Clearly, such testimony was admissible against them in connection with the conspiracy charge which was also being tried. (See *People* v. *Davis,* 56 N. Y. 95, 103; *People* v. *McKane,* 143 N. Y. 455, 470; *People* v. *Luciano,* 277 N. Y. 348, 358; *People* v. *Vaccaro,* 288 N. Y. 170, 172.) Furthermore, the events of June 3 were relevant in connection with the attempted extortion charge in that it was claimed by the People that the defendants' plans originated on that day upon the obtaining of Tamari's name from Nichols' address book. While there is no evidence directly contradicting the claim of the appellants that the $300 paid to Rosenfeld was a proper payment to him as a fee, the testimony concerning this payment was admissible as part of the over-all picture of what took place on June 3 and as showing the relationship of the parties, particularly in view of the conspiracy charge.

The appellants complain of the Assistant District Attorney's use of the record of the prior statement made to his office by the witness Kraft, and of the use of the Grand Jury testimony of Kraft and Nichols. These witnesses, called by the People, were not fully co-operative and Kraft was definitely a hostile witness. The use of the Kraft statement and the Grand Jury testimony was proper for the purpose of refreshing the recollection of the witnesses and for impeachment purposes. (See Code Crim. Pro. § 8-a; *People* v. *Ferraro,* 293 N. Y. 51, 56; *Matter of Roge* v. *Valentine,* 280 N. Y. 268, 276; *People* v. *Portese,* 279 App. Div. 63, 65; *People* v. *Bishop,* 270 App. Div. 133, 135; *People* v. *Steffens,* 12 A D 2d 962; *People* v. *Hernandez,* 12 A D 2d 607, affd. 10 N Y 2d 774.) In connection with the use of the same, the court repeatedly instructed the jury that these items were received solely for the limited purpose of refreshing the recollection of the witnesses and on the issue of their credibility, and that the items were not to be relied upon as evidence in chief; and the Assistant District Attorney so noted in his summation. In any event, it is clear that the use of the Kraft statement and Grand Jury testimony did not tend to mislead or confuse the jury in their determination of the issues in connection with the extortion charge. It is important to bear in mind that the testimony of Kraft and Nichols related to the June 3 episode, and not directly to the attempted extortion charge upon which the appellants were convicted; that their testimony came early in this long trial; that the charge of attempted extortion, of which the appellants were convicted, hinged principally upon the occurrences beginning in Tamari's apartment on June 18 and developed later on in the trial.

Notwithstanding that the minifone recordings of the conversations between Rosenfeld and Tamari were incomplete and that Rosenfeld's remarks were in the main inaudible, we hold that there was reasonable basis for the Assistant District Attorney's position as to their admissibility. Particularly, after Rosenfeld testified as to his version of the conversations there was justification in pressing for the admission of these records. Rather than constituting improper

trial conduct, the effort of the Assistant District Attorney to have the records received in evidence was entirely proper as constituting an offer in good faith of evidence believed to be admissible.

There was clearly no error in the receipt in evidence of the tape recording of the conversation between Tamari and Rosenfeld, and the transcript thereof. A proper foundation for the admission of the same was duly established by testimony. It appeared that one of the parties to the telephone conversation, namely, Tamari, gave his permission for the recording, and therefore, the receipt of the evidence was not in contravention of the provisions of the Federal Communications Act (U. S. Code, tit. 47, § 605) nor *contra* to the holding of the Federal decisions. (See *Goldstein* v. *United States,* 316 U. S. 114, 121; *Rathbun* v. *United States,* 355 U. S. 107.)

Furthermore, the appellants rely principally upon the argument that the comments, conduct and trial tactics of the Assistant District Attorney were such that the appellants were deprived of a fair trial. It is true that in certain instances the offers of evidence and questions by the Assistant District Attorney, and certain of his comments and statements, were not justified. So included are his references and questions directed to the making known or proving the suspensions of Buckles and Kelly as police officers; and also, certain of his statements in summation, including the allusion to the excluded minifone recordings. In the main, however, adequate rulings by the trial court prevented error prejudicial to the appellants; and in any event, considering the record as a whole, we have concluded that the substantial rights of the appellants were not impaired. (Cf. *People* v. *Alvarez,* 4 A D 2d 45, 46.)

It has recently been said that "Errors are almost inevitable in any trial, improprieties almost unavoidable, but the presence of one or the other furnishes no automatic signal for reversal and retrial." (*People* v. *Kingston,* 8 N Y 2d 384, 387.) While we are to be "ever intent on safeguarding the rights of a defendant * * * we recognize at the same time that the State has its rights too" (*People* v. *Kingston, supra,* p. 387). If we are satisfied that the alleged error and misconduct did not influence the verdict of the jury and that the appellants had a fair trial, then we should affirm. (See Code Crim. Pro., § 542.) Here, in determining whether the appellants had a fair trial, the entire record is to be viewed in the light of an exhausting seven-week trial during which each of the defendants was represented by able trial counsel. It appears that the appellants were given every opportunity for a full and fair presentation of their evidence. There was a very thorough and uncurtailed cross-examination of all People's witnesses by each of the four attorneys representing the defendants. The Trial Judge was eminently fair to the parties in his rulings and his charge was impartial and comprehensive. The jury deliberated for several hours; and indicative of a comprehensive analysis and consideration by them of the issues are their requests during deliberation for further instructions and their verdict which acquitted the defendant Mallon on all counts and which acquitted the appellants of the conspiracy count and the third count charging attempted extortion by threats against Joan Tamari.

Under the circumstances, we are persuaded "that the minds of the jurors were clearly directed to the true issue involved, that they were not misled or confused to defendant's detriment" (*People* v. *Mleczko,* 298 N. Y. 153, 162). Therefore, the judgments convicting the appellants of the crime of an attempt to commit extortion should be unanimously affirmed, upon the law and the facts. (Code Crim. Pro., § 542.)

VALENTE, J. P., STEVENS, EAGER, STEUER and BERGAN, JJ., concur.

Judgments of conviction unanimously affirmed, upon the law and the facts.